ARNOLD R. LOWERY, AND SONJA LOWERY v. FINANCE AMERICA CORPORATION, FORMERLY GAC FINANCE INCORPORATED OF NORTH CAROLINA

No. 7621DC584

(Filed 19 January 1977)

1. **Interest § 3— Truth in Lending Act — increase in obligation — disclosure requirements**

    Provisions of a loan agreement that "Lender may, at its option, make advances to Debtors from time to time aggregating not more than the statutory maximum of $900.00" and that "Lender is hereby committed to make loans up to a high credit of $900.00" did not call for a series of advances on a single loan commitment but created a line of credit upon which separate loans would be made; therefore, when the amount of the debtors' obligation to the lender was thereafter increased, the second transaction was a new transaction which was subject to the disclosure requirements of the Federal Truth in Lending Act and Federal Regulation Z. 15 U.S.C. § 1639; 12 C.F.R. § 226.8(i) and (j).

2. **Interest § 3— Truth in Lending Act — insurance disclosures**

    Written disclosures relating to insurance premiums must appear on the same side of either the note evincing the debt or some separate disclosure statement; however, the disclosure statement need not contain the insurance requisition. 12 C.F.R. § 226.8(a).

3. **Interest § 3— Truth in Lending Act — finance charge — premiums for credit insurance**

    Premiums for credit insurance cannot be excluded from the finance charge unless the fact that insurance is not required by the creditor is "clearly and conspicuously disclosed in writing to the customer." 12 C.F.R. § 226.4(a)(5)(i).

4. **Interest § 3— Truth in Lending Act — finance charge — failure to include credit insurance premiums**

    A lender violated the Federal Truth in Lending Act and Federal Regulation Z by excluding the cost of credit life and disability insurance from the amount of the finance charge disclosed to the borrower

Lowery v. Finance America Corp.

for the reason that the insurance disclosures were not clear, conspicuous and in meaningful sequence where the disclosure statement contained a group of boxes at the top of the page disclosing insurance and other costs, the insurance costs were typed in two boxes designated "Credit Dis." and "Credit Life," and the written explanation that the insurance was optional was contained in paragraphs at the bottom of the page.

5. **Interest § 3— Truth in Lending Act — insurance authorization — necessity for date**

A lender violated the Truth in Lending Act by obtaining an insurance authorization which contained no date. 12 C.F.R. § 226.4 (a) (5) (ii).

6. **Interest § 3— Truth in Lending Act — payment schedule — disclosure of number of payments**

A repayment schedule in a disclosure statement stating "Loan Is Payable In Monthly Payments The First One X $38.75 And 17 X $37.00 Each Except Final Payment Shall Be Unpaid Balance With Interest After Maturity at 6% Per Annum" was insufficient under the Truth in Lending Act since (1) the total number of payments must be expressed in a single figure, and (2) the final clause is so unclear as to obscure the preceding disclosures.

7. **Interest § 3— Truth in Lending Act — inaccurate disclosure of security interest**

A lender violated the Truth in Lending Act by inaccurately disclosing the nature of the security interest in after-acquired household goods where the lender's disclosure statement indicated it had a security interest in all of the borrowers' after-acquired household goods when, in fact, G.S. 25-9-204(4)(b) limited the security interest to household goods acquired within ten days after the lender loaned the money to the borrower. 15 U.S.C. § 1639(a)(8); Federal Regulation Z, 12 C.F.R. § 226.8(b)(5).

8. **Interest § 3— Truth in Lending Act — unintentional error — clerical error**

Section of the Truth in Lending Act absolving a creditor from liability for an unintentional and "bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error" relates only to clerical errors, mistakes in arithmetic and similar errors. 15 U.S.C. § 1640(c).

9. **Interest § 3— Truth in Lending Act — good faith act — reliance on invalid regulations**

Section of the Truth in Lending Act absolving a creditor from liability for "any act done or omitted in good faith in conformity with any rule, regulation or interpretation thereof by the Board" relates only to situations where a disclosure statement, prepared in accordance with the rules or regulations, is later determined to be invalid because the relied upon rules or regulations are invalid or no longer in effect.

10. **Interest § 3— Truth in Lending Act — insufficient disclosure — recovery of penalty and attorney's fees**

> Where a lender's disclosure statements were defective as a matter of law, the borrowers were entitled to recover the statutory penalty and their reasonable attorney's fees, notwithstanding they suffered no actual damage. 15 U.S.C. § 1640(a)(2)(A); 15 U.S.C. § 1640(a)(2).

APPEAL by plaintiffs from *Clifford, Judge.* Judgment entered 11 March 1976 in District Court, FORSYTH County. Heard in the Court of Appeals 7 December 1976.

Plaintiffs, Arnold and Sonja Lowery, brought this action against defendant, Finance America Corporation (FAC), to recover the statutory penalty for violations of the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.*, (the Act), and Federal Regulation Z, 12 C.F.R. § 226.1, *et seq.*, (Regulation Z), adopted by the Federal Reserve Board pursuant to the Act. FAC counterclaimed, alleging plaintiffs' default on the loans. Having jurisdiction under 15 U.S.C. § 1640(e), the court, without a jury, decided this matter upon the allegations of the amended pleadings and the stipulations of fact made in the pretrial order.

By their amended complaint, plaintiffs allege that they borrowed money from FAC on 7 December 1972 and 8 June 1973. They further allege that FAC failed to make certain disclosures required by the Act, 15 U.S.C. § 1639, and Regulation Z, 12 C.F.R. § 226.8. Accordingly, they ask for the statutory civil penalty, twice the finance charge on each transaction, plus costs and reasonable attorneys' fee. 15 U.S.C. § 1640(a). FAC, in its answer and counterclaim, alleges that the necessary disclosures were made and asks to receive the amount outstanding and due to it on the Lowerys' promissory note, plus interest. The Lowerys, in their reply, allege that the amount of FAC's statutory liability to them exceeds the amount outstanding on their note to FAC. They ask for a declaratory judgment, plus a judgment for the excess, costs and attorneys' fees.

The stipulated facts are as follows: On 7 December 1972 the parties entered into a loan agreement, formalized in four documents. The first was a Loan Agreement (exhibit 1), subscribed by the Lowerys, which provided that FAC was "committed to make loans up to . . . $900.00" to the Lowerys. The Loan Agreement was "made on the terms and conditions set forth [t]herein and was incorporated by reference" in the re-

maining three documents. The second document (exhibit 2) consisted of a disclosure statement plus a voluntary insurance requisition. At the top of this document appeared a block of boxes as follows:

| First Initial Last Name | Spouse Name | | | | Official Fees | Total of Payments |
|---|---|---|---|---|---|---|
| Arnold    R.    Lowery | Sonja | $119.92 ⟸ FINANCE CHARGE | | | $2.00 | $667.75 |
| Street and Number | | Other Insurance | Credit Life | Credit Dis. | | Amount Financed |
| (Illegible) | | $ NONE | $19.98 | $19.43 | NONE | $547.83 |
| City, State, Zip Code | APR | Loan Is Payable In Monthly Payments, The First One | | | First Payment Due | Final Payment Due |
| Winston-Salem, N. C.        27107 | 25.70% | X $38.75 and 17 X $37.00 Each Except Final Payment Shall Be Unpaid Balance With Interest After Maturity at 6% Per Annum | | | 1-15-73 | 6-15-74 |
| | ↖ | ANNUAL PERCENTAGE RATE | | | | |

This document indicated that the loan was secured by a security interest in "all of the Household Goods belonging to the Borrowers," including after-acquired household goods. Next, the document explained, in this order, the default provisions, prepayment provisions, credit insurance provisions, and the range of annual percentage rates, which depended on the size and terms of the loan. The document was signed by Arnold Lowery. Below his signature was a "Voluntary Insurance Requisition," relating to the insurance disclosures, made above, which informed the borrower in ordinary size type that credit life and credit disability insurance were not required by the lender in connection with the advance. The requisition itself said that the borrower "elect[ed] to have the Lender obtain Credit Life and/or Credit Disability insurance" for him, after the lender revealed the cost of this insurance to him. Lowery's signature again appeared beneath this requisition.

The third document was a Federal Disclosure Statement, Borrower's Copy (exhibit 3). This was identical to exhibit 2, except it omitted the insurance requisition and contained a statement revealing that there were no comakers on the note. It was not signed by Lowery. Finally, the Statement of Contract-Voucher (exhibit 4) repeated all the information in the boxes on the disclosure forms (exhibits 2 and 3), except the annual percentage rate. This Contract-Voucher explained that the contract consisted of the Loan Agreement, the Federal Disclosure Statement, the check and/or the Contract-Voucher. It repeated the default provisions and prepayment provisions. It stated

that by signing the attached receipt the borrower agreed to repay the cash advance, and it reiterated that credit insurance was not required and that the loan was secured by household goods. The document then stated the amount of cash advanced, $547.83, and substracted the insurance premiums and recording charge, a total of $41.41, leaving $506.42 as the cash given to the Lowerys. Both Arnold and Sonja Lowery signed this receipt.

The Lowerys reduced their outstanding debt to FAC to $407.88. Then, on 8 June 1973, they obtained more money from FAC. The 8 June 1973 transaction was based on the December Loan Agreement. In addition, the parties executed three new documents. The Federal Disclosure Statement (exhibit 6) was identical in form to that of 7 December 1972. The boxes at the top appeared as follows:

| First Initial Last Name<br>Arnold   R.   Lowery | Spouse<br>Sonja | $218.10 ⇐ FINANCE CHARGE | | | Official Fees<br>$ NONE | Total of Payments<br>$1118.10 |
|---|---|---|---|---|---|---|
| Street and Number<br><br>(Illegible) | | Other Insurance<br>$ .60 | Credit Life<br>$44.64 | Credit Dis.<br>$32.56 | NONE | Amount Financed<br>$900.00 |
| City, State, Zip Code<br><br>Winston-Salem, N. C.<br>27107 | APR<br><br>21.57% | Loan Is Payable In Monthly Payments, The First One<br>X $48.60 and 23 X $46.50 Each Except Final Payment Shall Be Unpaid Balance With Interest After Maturity At 6% Per Annum<br>ANNUAL PERCENTAGE RATE | | | First Payment Due<br>7-15-73 | Final Payment Due<br>6-15-75 |

The Statement of Contract-Voucher (exhibit 7) showed a cash advance to the Lowerys of $900.00, less a check to them for $414.32, which left a total of $485.68 in cash owed to them. All of this cash was immediately used to pay the balance due on the 7 December 1972 loan, plus the insurance premiums on the 8 June 1973 loan.

The final document involved in this transaction was the check for $414.32 (exhibit 5). On the back of the check was a statement to the effect that credit insurance was not required. Beneath this was a statement entitled "Voluntary Credit Life And/Or Disability Insurance Requisition." It was thereafter provided that the undersigned could "elect to have lender" obtain insurance coverage "checked below." Both credit life insurance, at a cost of $44.64, and credit disability insurance, at a cost of $32.56, were checked. Although it was not dated, both

Lowerys signed this voluntary insurance requisition. In a space below the insurance requisition the Lowerys endorsed the check, thereby "acknowledg[ing] receipt of Federal Disclosure Statement and Statement of Credit-Voucher."

There is an outstanding balance of $885.85, plus interest, due to FAC. From a judgment that FAC recover the outstanding balance plus interest, and that the Lowerys recover nothing, the Lowerys appeal.

*Herman L. Stephens for plaintiff appellants.*

*Henry C. Frenck for defendant appellee.*

ARNOLD, Judge.

Plaintiffs assign error to the court's holding that "the June 8, 1973, transaction is a subsequent advance under a prior agreement to extend credit and is not subject to" the disclosure requirements of the Act. They contend that the December 1972 and June 1973 loans were separate transactions, and that both were subject to the disclosure requirements of the Act and Regulation Z. Plaintiffs' position is that the court erred in refusing to award them the statutory penalty and reasonable attorney's fee. According to plaintiffs, the disclosures were insufficient in each transaction because (1) FAC excluded the insurance premiums from the amount of the finance charges; (2) FAC did not disclose the total number and amount of payments; and (3) FAC did not accurately disclose the nature of the security interest.

[1] The trial court erred in holding that the 8 June 1973 transaction was not a new transaction but only a subsequent advance, made pursuant to the 7 December 1972 Loan Agreement, which was not subject to additional disclosure requirements of the Act and Regulation Z. The June 1973 loan was a new transaction, and additional disclosures were required.

Two sections of Regulation Z are pertinent, 12 C.F.R. § 226.8(i) and (j). Plaintiffs rely on 12 C.F.R. § 226.8(j) which provides: "If . . . an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirements" of the Act and Regulation Z. The amount of the December 1972 obligation was increased from $667.75 to $1,118.10 in June 1973.

FAC relies on 12 C.F.R. § 226.8(i) which dispenses with additional disclosures "[i]f a loan is one of a series of advances made pursuant to a written agreement under which a creditor is or may be committed to extend credit to a customer up to a specified amount." FAC contends that its Loan Agreement (exhibit 1) is such a "written agreement." We disagree.

The purpose of 12 C.F.R. § 226.8(i) is to eliminate unnecessary and redundant disclosures. *See,* Public Position Letter of the Federal Reserve Board, No. 456 (17 March 1971). A second disclosure need not precede a second advance when the customer has already "approved in writing the annual percentage rate or rates, the method of computing the finance charge or charges, and other terms" of the second advance.

In the Loan Agreement of December 1972 it provides:

"Lender may, at its option, make advances to Debtors from time to time aggregating not more than the statutory maximum amount of $900.00. . . . Lender is hereby committed to make loans up to a high credit of $900.00. . . . "

This does not comport with 12 C.F.R. § 226.8(i) since it does not provide for a "series of advances." It merely indicates that FAC will make additional loans from "time to time" in the future. The Loan Agreement does not call for a series of advances on a single loan commitment, but it creates a line of credit upon which separate loans will be made.

Moreover, the disclosures made prior to the December 1972 loan are insufficient to satisfy § 226.8(i). The annual percentage rate, finance charge and other terms disclosed then were different from those of the June 1973 loan. The amount financed, the total of payments, the number of payments, the finance charge and insurance premiums were all increased. The annual percentage rate decreased from 25.70 percent to 21.57 percent, which tends to show there were two transactions instead of a series. And, finally, the 1973 transaction increased the 1972 obligation. "If . . . an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirements [of Regulation Z and the Act]." 12 C.F.R. § 226.8(j).

[4] We further conclude that the trial court erred by failing to find that FAC violated the Act and Regulation Z by excluding the cost of credit life insurance and credit disability insur-

ance from the amount of finance charge disclosed in both transactions. FAC treated the credit insurance premiums as parts of the amount financed and not as parts of the finance charges. This is correct procedure only if

> "(1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and

> "(2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof." 15 U.S.C. § 1605(b).

Plaintiffs argue that FAC failed to comply with the above section in both transactions, and that in the June 1973 transaction the insurance requisition appearing on the back of the check lacked the date as required by 12 C.F.R. § 226.4(a) (5)(ii).

[2] Written disclosures relating to insurance premiums are among those which must appear on the same ·side of either the note evincing the debt or some separate disclosure statement. 12 C.F.R. § 226.8(a). FAC adopted the latter method of disclosure in this case. Insurance disclosures appear on the Federal Disclosure Statement, Borrower's Copy (exhibit 3), and the combination disclosure statement-insurance requisition which was signed by Arnold Lowery and retained by FAC (exhibit 2).

Plaintiffs contend that the insurance requisition must appear on the Federal Disclosure Statement. However, the disclosure statement need not contain the insurance requisition. *Burton v. G.A.C. Finance Co.*, 525 F. 2d 961 (5th Cir. 1976); *Gillard v. Aetna Finance Co., Inc.*, 414 F. Supp. 737 (E.D. La. 1976). The Act and Regulation Z do not speak of the insurance requistion as a disclosure, nor do they expressly require the insurance requisition to be among the disclosures. What are required to be disclosed are the cost of the insurance and the fact that insurance is not a factor in the decision to grant or withhold a loan.

[3]   According to Regulation Z, 12 C.F.R. § 226.6(a), "The disclosures required . . . by this part shall be made clearly, conspicuously, [and] in meaningful sequence. . . . " Premiums for credit insurance cannot be excluded from the finance charge unless the fact that insurance is not required by the creditor is "clearly and conspicuously disclosed in writing to the customer." 12 C.F.R. § 226.4(a)(5)(i).

[4]   The insurance disclosures contained in the Federal Disclosure Statement given to the Lowerys are not clear, conspicuous and in meaningful sequence. First, the cost of the insurance is neither clearly nor conspicuously revealed. The cost is typed in two of many boxes at the top of the page. These boxes are designated "Credit Life" and "Credit Dis." The meaning of these words is not clear to laymen for whose protection the Act and Regulation are meant. 15 U.S.C. § 1601. Since the insurance cost disclosures are not clear, these cost disclosures also are not conspicuous. *See, Woods v. Beneficial Finance Co.*, 395 F. Supp. 9 (D. Oregon, 1975).

Second, the insurance disclosures are not in a meaningful sequence. The boxes containing the insurance costs are at the top of the page while the written explanation that the insurance is optional is contained in paragraphs at the bottom of the page. Unrelated material is contained between the insurance costs and the written explanations. There is not even any reference in the written text to the boxes of information at the top of the page. *Id.*

FAC did not disclose the insurance information in a clear, conspicuous and meaningful way, and for that reason the cost of the insurance ought to have been included in the amount of the finance charge. This error by FAC violates 15 U.S.C. § 1605(b) and 12 C.F.R. § 226.4(a) and makes FAC liable for the statutory penalties.

We are aware of factually similar cases which reach contrary results. *See, e.g., Gillard v. Aetna Finance Co., Inc., supra; Simmons v. American Budget Plan, Inc.*, 386 F. Supp. 194 (E.D. La., 1974). The court in *Simmons* said of a disclosure statement using a group of boxes to disclose insurance and other costs, that "defendants' form was sufficiently clear that minimal possibility of confusion existed." *Id.* at 199. These cases are *sui generis*. Each case, as the one before us, must be decided on its own facts. In this case we do not find the disclosures to be

"sufficiently clear" in either the December 1972 or June 1973 transaction.

[5]   Plaintiffs correctly argue that FAC failed to obtain a *dated* insurance authorization for the June 1973 transaction. This violates 12 C.F.R. § 226.4(a)(5)(ii), requiring a "specific dated and separately signed affirmative written indication of [the] desire" to obtain insurance.

[6]   Among the boxes at the top of the Federal Disclosure Statement is one which explains the repayment schedule. It says:

> "Loan Is Repayable In Monthly Payments The First One
> X $................,........ And ...................... X $......................
> Each Except The Final Payment Shall Be Unpaid
> Balance With Interest After Maturity At 6% Per Annum."

The Lowerys assert that this form is inadequate because it does not state the total number of payments; because it uses a confusing formula to disclose the number and amounts of payments; and because the final clause, "Each Except Final Payment Shall Be Unpaid Balance With Interest After Maturity At 6% Per Annum," is confusing. Their argument has merit.

First, the case of *Powers v. Sims and Levin Realtors,* 396 F. Supp. 12 (E.D. Va., 1975), says that the total number of payments must be expressed in a single figure. The disclosure is not sufficient when the borrower has to add the total number of payments for himself. Second, we find that even if the disclosures were otherwise sufficient, the final clause is so unclear as to obscure the preceding disclosures, and violates 12 C.F.R. § 226.6(c).

[7]   A final argument by the Lowerys is that the court erred in not finding that FAC violated the Act by inaccurately disclosing the nature of the security interest taken in after-acquired household goods. The court did err. 15 U.S.C. § 1639(a)(8), and Regulation Z, 12 C.F.R. § 226.8(b)(5) both require that the disclosure of a security interest clearly identify the property to which the security interest relates. FAC's disclosure statements indicate that FAC has a security interest in all of the borrowers' after-acquired household goods. In fact, G.S. 25-9-204(4)(b) limits this security interest to household goods acquired within ten days after the lender loans the money to the borrower. The disclosure statement is misleading by indicating that FAC has a greater security interest than in fact it does. *Tinsman v.*

---

---

*Moline Beneficial Finance Co.,* 531 F. 2d 815 (7th Cir., 1976) ; *Woods v. Beneficial Finance Co., supra.*

**[8, 9]** FAC argues that certain "good faith" defenses present in the Act protect it from liability. We disagree. FAC relies on 15 U.S.C. § 1640(c), which protects the creditor who makes an unintentional and "bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." As the reference to "procedures" implies, 15 U.S.C. § 1640(c) is limited to clerical errors, mistakes in arithmetic and other errors of this sort. *Ratner v. Chemical Bank,* 329 F. Supp. 270 (S.D. N.Y., 1971). FAC also relies on 15 U.S.C. § 1640(f), which says:

> "No provision of this section or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation or interpretation thereof by the Board . . . . "

Section 1640(f) is a recent addition and has been construed only a few times. The leading case, *Ives v. W. T. Grant Co.,* 522 F. 2d 749 (2d Cir., 1975), limits the rule to situations where a disclosure statement, prepared in accordance with the rules or regulations, is later determined to be invalid because the relied upon rules or regulations are invalid or no longer in effect. *See, Houston v. Atlanta Federal Sav. & Loan Ass'n.,* 414 F. Supp. 851 (N.D. Ga., 1976) ; *Gillard v. Aetna Finance Co., Inc., supra.* FAC has not met its burden of showing that it prepared its statement "in conformity with any rule, regulation or interpretation." Accordingly, 15 U.S.C. § 1640(f) provides no help for FAC.

**[10]** Since the facts of this case are not in dispute we hold that the FAC disclosure statements are defective as a matter of law. Plaintiffs are entitled to the statutory penalty provided by 15 U.S.C. § 1640(a)(2)(A). It matters not that the Lowerys suffered no actual damage, since the purpose of the penalty provisions is to encourage the public to enforce the Act. *Ratner v. Chemical Bank, supra.* In addition, the Lowerys are entitled to recover their reasonable attorney's fees. 15 U.S.C. § 1640 (a)(3). This provision, also, is meant to encourage enforcement of the Act.

Judgment was entered for FAC on its counterclaim in the amount of $885.85, plus interest at 6% per annum calculated

from 24 January 1974. The Lowerys do not challenge this part of the judgment, and it is affirmed.

Reversed in part and remanded.

Judges MORRIS and CLARK concur.