**Manuel HERRERA and Lupe Herrera, Plaintiffs-Appellees, Cross-Appellants,**

v.

**FIRST NORTHERN SAVINGS AND LOAN ASSOCIATION, Defendant-Appellant, Cross-Appellee.**

Nos. 80–2311, 81–1019.

United States Court of Appeals, Tenth Circuit.

Nov. 17, 1986.

Harvey Fruman, Santa Fe, N.M., for plaintiffs-appellees, cross-appellants.

John A. Mitchell, (Christina L.G. Chavez of Mitchell, Alley & Rubin, Santa Fe, N.M., was also on brief) for defendant-appellant, cross-appellee.

Before HOLLOWAY, Chief Judge, and McKAY, Circuit Judge, and KANE, District Judge.*

* The Honorable John L. Kane, Jr. of the United States District Court for the District of Colorado, sitting by designation

HOLLOWAY, Chief Judge.

Plaintiffs and defendant appeal different provisions of the district court's order granting summary judgment for the plaintiffs-appellants Manuel and Lupe Herrera. The court held that defendant-appellee, First Northern Association (First Northern), had not complied with requirements of the Truth-in-Lending Act (TILA or Act), 15 U.S.C. § 1601 *et seq.*, and the Federal Reserve Board Regulations pursuant thereto, Regulation Z, 12 C.F.R. § 226.1 *et seq.* (1980). Four questions are presented by the appeal and cross-appeal: (1) whether plaintiffs' cross-appeal was timely; (2) whether there were genuine issues of material fact, legal grounds, or defenses which precluded summary judgment for plaintiffs; (3) whether the court properly limited plaintiffs to one statutory $1,000 penalty; and (4) whether the court erred in disallowing recovery of the New Mexico gross receipts tax imposed on the fees of their attorney.

## I

Plaintiffs and defendant entered into a real estate loan agreement, evidenced by a promissory note secured by a mortgage on the Herreras' real property. Pursuant to this agreement, First Northern, in its ordinary course of business, extended credit to the Herreras, jointly and severally, as husband and wife, and imposed a finance charge. First Northern provided the Herreras with a TILA disclosure statement entitled "NOTICE TO CONSUMER REQUIRED BY LAW," which disclosed among other things the interest charged, expressed as an "annual percentage rate."

The Herreras sued First Northern alleging numerous violations of TILA and Regulation Z, and sought to recover statutory damages, reasonable attorney's fees and costs. Plaintiffs sought summary judgment, which was granted. The court held that defendant's disclosure of the "annual percentage rate" on its TILA disclosure statement did not fulfill the "more conspicuously" mandate of Parts 226.6(a) and 226.-8(b)(2) of Regulation Z, and therefore, violated the Act. I R. 67. It found that while the term "annual percentage rate" appeared on the "Notice to Customer Required by Federal Law" in all capital letters, over 30 other terms and phrases appeared on this disclosure statement printed in the identical size, style and boldness of type in the capitalized format. I R. 64–65. The court granted plaintiffs a single statutory penalty of $1,000 to be divided between them, costs of $20.16, and attorney's fees of $1,930.00. This appeal and cross-appeal followed.

## II

On our own motion, we raised the question of the timeliness of the cross-appeal. The summary judgment order was filed in the clerk's office on November 18, 1980. It was entered on the court's civil docket on November 28. Defendant's notice of appeal was filed on December 4 and plaintiffs' notice of cross-appeal was filed on December 19.

The rules concerning notices of appeal in civil cases are provided by Rules 3 and 4(a) of the Federal Rules of Appellate Procedure. Rule 3 provides that an appeal is perfected by filing a notice of appeal with the clerk of the district court within the time allowed by Rule 4. Rule 4(a)(1) requires that a notice of appeal be filed within 30 days of entry of the judgment or order appealed from. However, Rule 4(a)(3) provides alternative time periods for filing cross-appeals. If a timely notice of appeal is filed, any other party may file a notice of appeal within 14 days after filing of the first notice of appeal, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires. Rule 4(a)(3), F.R.A.P.

The timeliness of plaintiffs' notice of cross-appeal turns on whether the time began to run from the date of filing of the summary judgment order, or from the entry of the order on the civil docket. If the former date controls, the notice of cross-appeal was untimely. However, we are persuaded that the time period is computed from the order's entry on the civil docket,

and not the date of its filing so that the notice of the cross-appeal was timely.[1] With respect to the interpretation of Rule 4, F.R.A.P., 9 Moore's Federal Practice ¶ 204.03 states that the "time for appeal commences to run from the date on which the judgment that has thus been set forth in a separate document is entered on the civil docket." *See also* Rules 58 and 79(a), F.R.Civ.P.[2] This date of entry of the order must be recorded in the official court docket and the order is not final or appealable until so entered. *Chem-Haulers, Inc. v. United States,* 536 F.2d 610, 615 (5th Cir. 1976). "Entry" and "filing" are words of art:

"Entry" has a well defined meaning under the rules; it occurs only when the essentials of a judgment or order are set forth in a written document separate from the court's opinion and memorandum *and* when the substance of this separate document is reflected in an appropriate notation on the docket sheet assigned to the action in the district court.

[Emphasis in original.] *Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683, 688 (4th Cir.1978). Filing, on the other hand, means "the delivery of the thing filed into the actual custody of the proper officer keeping the records of the court. It connotes a deposit for permanent presentation." *The Washington,* 16 F.2d 206, 208 (2d Cir.1926). "Entry ... is ordinarily synonymous with recording. It connotes a duty greater than, or additional to, that preservation which is the essence of filing." *Id.*

The summary judgment order was filed on November 18, 1980, but not entered on the docket until November 28. I R. 103. Hence the date on which the notice of the cross-appeal was filed was 21 days after entry of the judgment and, therefore, within the alternative 30–day period prescribed by Rule 4(a)(3).

## III

First Northern contends that the district court erred in granting summary judgment in favor of plaintiffs for three principal reasons: (1) that genuine issues as to material facts existed regarding the sufficiency of the "annual percentage rate" disclosure which precluded summary judgment; (2) that in any event the "annual percentage rate" disclosure was properly shown so as to meet the § 226.6(a) requirements; and (3) that even if there was a violation of the Act, defendant is not liable because of the "bona fide error" and "informed use of credit" defenses.

### A.

Plaintiffs contend that First Northern's TILA disclosure statement violates § 226.-6(a) of Regulation Z, 12 C.F.R. § 226.6(a) (1980), as a matter of law because the term "annual percentage rate" is not printed "more conspicuously" than other terminology required by the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* (1980). Section 226.6(a) of the Regulation states in pertinent part:

The disclosures required to be given by this part shall be made clearly, conspicuously, in meaningful sequence, in accordance with the further requirements of this section, and at the time and in the terminology prescribed in applicable sections.... *[W]here the terms "finance charge" and "annual percentage rate" are required to be used, they shall be*

1. If we compute the time period from the date the order was filed—November 18, 1980—pursuant to Rule 26(a), F.R.A.P., the notice of cross-appeal filed on December 19, would have been filed on the 15th day after the notice of appeal was filed and would have been beyond the 14–day period provided by Rule 4(a)(3), F.R.A.P. It also would have been beyond the 30–day period prescribed by Rule 4(a)(1), F.R.A.P., being 31 days after the November 18 filing of the order.

2. Rule 58 of the Federal Rules of Civil Procedure sets forth two requirements that must be met before a judgment is effective. First, the judgment must be set forth on a separate document. Second, the judgment must be entered as provided in Rule 79(a), Fed.R.Civ.P. Rule 79(a) requires the clerk to keep a "civil docket" and to enter therein each civil action and all judgments, *inter alia,* chronologically.

*printed more conspicuously than other terminology required by this part.*
(Emphasis added.)

■ The validity of this provision in the Regulation is not questioned and only the issue of violation of it here is involved. It is unnecessary for plaintiffs to show any actual damage in order to recover for TILA violations under § 1640. *Hinkle v. Rock Springs Nat'l Bank,* 538 F.2d 295 (10th Cir.1976). On the disclosure statement, the term "annual percentage rate" is printed in all capital letters in boldface type. I R. 36. However, § 226.6(a) of the Regulation requires that the APR be printed "more conspicuously" than other required terms. However, as the district court concluded, over 30 other terms and phrases appearing on the disclosure statement are also printed in capital letters, in the identical size, style and boldness of type as the "annual percentage rate". Thus, the APR disclosure does not meet the § 226.6(a) mandate.

Defendant argues that there is a genuine issue as to whether the "annual percentage rate" is "more conspicuously" shown and that the issue of "conspicuousness" is one on which reasonable minds could differ, precluding summary judgment. We disagree. We hold that reasonable minds cannot differ with the ruling that the disclosure statement fails to meet the § 226.6(a) mandate. *See Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1379–80 (11th Cir.1984) (where annual percentage rate was printed in all capital letters but other required terminology was likewise shown, § 226.6(a) was violated); *Dixey v. Idaho First Nat'l Bank,* 677 F.2d 749 (9th Cir.1982) (Although the "annual percentage rate" term was in boldface type on bank's standard loan agreement, the disclosure statement violated conspicuousness requirement of § 226.6(a) where numerous other headings on the page were also in boldface type).

Moreover, the district court's conclusion comports with the underlying policies of the Truth-in-Lending Act. The Act was passed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601 (1982). The most important disclosures mandated are those on which consumers can compare competing loans—the finance charge and annual percentage rate. *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 569, 100 S.Ct. 790, 798, 63 L.Ed.2d 22 (1980). Regulation Z, by which the Federal Reserve Board specified the disclosures helpful to informed borrowing, reflects the Act's concern with the cost of credit by requiring the annual percentage rate and finance charge to be printed more conspicuously than other terms. The rule facilitates comparison shopping for credit and stresses the cost of credit for the consumer. *Dixey v. Idaho First Nat. Bank,* 677 F.2d at 751.

**B.**

Defendant asserts that its failure, if any, to disclose the annual percentage rate "more conspicuously" was unintentional and resulted from a bona fide error, so that it is relieved from liability under § 1640(c) of TILA. We agree with the district court that the defense does not apply here.

While defendant correctly points out that two different interpretations of § 1640(c) emerged in the 1970s—one view construing it to apply only to mistakes of a clerical or mathematical nature and the other construing § 1640(c) more broadly to encompass good faith efforts at compliance—Congress resolved this issue when it amended the Act by the Truth-in-Lending Simplification and Reform Act of 1980, Pub.L. No. 96–221, tit. VI, 94 Stat. 132, 168 (1980), *reprinted in* 1980 U.S. Code, Cong. & Admin. News 236, 251. Congress clearly stated in its amendment of § 1640(c) that "[e]xamples of a bona fide error include, but are not limited to clerical, calculation, computer malfunction and programming, and printing errors, *except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error."* 15 U.S.C. § 1640(c) (1982). *See also* S.Rep. No. 96–368, 96th

Cong., 2d Sess. 30, *reprinted in* 1980 U.S. Code Cong. & Admin. News 268.

■ Defendant's violation was not clerical, mathematical, or due to printing or computer errors. It was perhaps an "error of legal judgment," a belief that it had complied with the Act. However defendant's failure to adopt a disclosure statement which complied with TILA and Regulation Z requirements, even if in good faith, is not excusable under § 1640(c). *McGowan v. King, Inc.,* 569 F.2d 845 (5th Cir. 1978). The district court correctly rejected this defense.

■ Finally, defendant contends that because plaintiffs received the benefit of the "informed use of credit" which concerned Congress, it is not liable for any damages. As noted, no showing of actual damages is required in order for plaintiff to recover the statutory penalty. *Hinkle v. Rock Springs Nat'l Bank,* 538 F.2d at 297. A proven violation of the disclosure requirements is presumed to injure the borrower by frustrating the purpose of permitting consumers to compare various available credit terms. *Dzadovsky v. Lyons Ford Sales, Inc.,* 593 F.2d 538, 539 (3d Cir.1979).

**IV**

Plaintiffs argue that the district court erred by awarding them only one statutory recovery of $1,000. They contend that joint and several obligors are each entitled to an award of the statutory penalty under § 1640(a)(3). However, Congress resolved the issue in 1980 when it enacted the Truth in Lending Simplification and Reform Act of 1980, Pub.L. No. 96–221, Title V, 94 Stat. 168 (1980), *reprinted in* 1980 U.S. Code, Cong. & Admin. News 251. This Act amended the statute to limit recovery among joint obligors to a single penalty amount. 15 U.S.C. § 1640(d) (1985).

We are persuaded by the reasoning in *Brown v. Marquette Sav. and Loan Ass'n,* 686 F.2d 608, 615 (7th Cir.1982), that the 1980 Act should be applied here, although the transaction occurred earlier. *Brown* pointed out that this amendment is subject

to two opposing interpretations. First, it can be argued that the Act was intended to clarify the intended meaning of the original statute. Second, it may be said that Congress intended to change the law and that the previous statute therefore meant exactly the opposite of the amended provision. Because the legislative history of the 1980 Act is silent as to the reason for the addition of a new subsection (d) to § 1640, *Brown* concluded that:

> One method of interpreting the significance of subsequent amendments to a statute takes dispute or ambiguity, such as a split in the circuits, to be an indication that a subsequent amendment is intended to clarify, rather than change, the existing law. 2A Sutherland Statutory Construction § 49.11 at 265–66. We are persuaded by this principle, and by the absence of any indication of intent to change the law in the legislative history of the 1980 Act, that a change in the law was not intended by the addition of section 1640(d). We find rather that the amendment was intended to remove the dispute surrounding the interpretation of the section, and to clarify the original intent of the Congress in enacting the TILA.... We hold therefore that in light of the 1980 Act's addition of new subsection (d), only one recovery per violation was intended to be permitted under TILA section 1640(a).

■ We hold that the district court did not err when it allowed only one recovery of $1,000 to be divided among plaintiffs as joint obligors.

**V**

Finally, plaintiffs argue that the district court erred when it disallowed a recovery of a gross receipts tax imposed on the attorney's fees awarded to plaintiffs.

New Mexico imposes a gross receipts tax on the total amount of money received by attorneys for the performance of legal services. This tax may be passed on to their clients. N.M.Stat.Ann. § 7–9–1 (1978). Plaintiffs agreed to reimburse their attorney for the amount of this tax. Their

attorney in turn included this tax in his motion to tax costs and expenses as part of the attorney's fee requested. I R. 60, 61. Plaintiffs point out that in taxing costs against the losing party, the amount of gross receipts tax charged by process servers, court reporters and the like are included. They argue that the same should hold true when the losing party is ordered to pay the attorney's fees of the prevailing party. Since this tax is a cost to them as prevailing parties, it should be assessed against the defendant. The district court in taxing costs of $20.16 and attorney's fees of $1,930.00 against defendant did not include this tax.

Plaintiffs as the prevailing parties in their action to enforce civil liability for violation of the Act are entitled to recover reasonable attorney's fees and costs. 15 U.S.C. § 1640(a)(3). Section 1640(a)(3) leaves to the court the determination of what fee is reasonable and what costs are to be assessed. *Martinez v. Idaho First Nat'l Bank*, 755 F.2d 1376, 1379 (9th Cir. 1985). An award of attorney's fees and costs will be modified for an abuse of discretion. *McGowan v. King*, 616 F.2d 745, 746-47 (5th Cir.1980); *Carr v. Blazer Financial Services, Inc.*, 598 F.2d 1368, 1370 (5th Cir.1979).

The district court did not abuse its discretion in disallowing recovery of the gross receipts tax. First, the court carefully evaluated the attorney's fees requested in light of the principles of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974), and awarded the entire $1930.00 fee requested, but denied the tax. Second, while we note that both the Supreme Court of New Mexico and the United States District Court for the District of Colorado, ruling on a federal antitrust case involving New Mexico attorneys, have included this tax in awarding attor-

ney's fees in other cases,[3] we find no abuse of discretion in the ruling made here. Plaintiffs are not required by law to pay this tax. Moreover, an award of attorney's fees to successful plaintiffs in a Truth-in-Lending suit is not governed by a party's agreement to pay his attorney a certain hourly rate or, in this case, the attorney's gross receipts tax. *See Sellers v. Wollman*, 510 F.2d 119 (5th Cir.1975). Finally, we do not feel that the disallowance of the tax defeats the Congressional goals underlying the Act to make a litigant whole and to create a system of private attorneys general to aid the effective enforcement of the Act.

AFFIRMED.

**3.** Some courts have included the gross receipts tax as part of attorney's fee awards with no discussion. *Brewer v. Southern Union Co.,* 607 F.Supp. 1511, 1537 (D.Colo.1984) (antitrust); *Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983) (divorce); *Amos v. Gilbert Western Corp.,* 103 N.M. 631, 711 P.2d 908 (App.1985) (worker's compensation); *Shadbolt v. Schneider, Inc.,* 103 N.M. 544, 710 P.2d 738 (App.), *rev'd in part,* 103 N.M. 467, 709 P.2d 189 (1985) (same); *Paternoster v. La Cuesta Cabinets, Inc.,* 101 N.M. 773, 689 P.2d 289 (App.1984) (same); *Barela v. Barela,* 95 N.M. 207, 619 P.2d 1251 (App.1980) (divorce).