861 P.2d 214

EQUITY PLUS CONSUMER FINANCE
AND MORTGAGE COMPANY, LTD., a
New Mexico corporation, Philip J. Pe-
trocelli, Eleanor Petrocelli, Bernard
Daly, Ann Daly, Philip V. Petrocelli,
Leafland Associates, Inc., Employees
Pension Plan and Trust, Sanford I.
Feld, Trustee, Plaintiffs–Appellees, and
Cross–Appellants,

v.

John P. HOWES and Judith E. Howes,
Defendants–Appellants, and Cross–
Appellees.

No. 20917.

Supreme Court of New Mexico.

Sept. 20, 1993.

**152**

Garber and Hallmark, P.C., B. Cullen Hallmark, Santa Fe, for plaintiffs-appellees and cross-appellants.

J. Ronald Boyd, Santa Fe, for defendants-appellants and cross-appellees.

## OPINION

FRANCHINI, Justice.

This case involves two real estate mortgage transactions governed by the Truth In Lending Act (TILA), 15 U.S.C. §§ 1601–1693r (1993) and NMSA 1978, Sections 56–8–7, –8 (Repl.Pamp.1986). This case comes to the Court on direct appellate jurisdiction as a contractual matter. SCRA 1986, § 12–102 (Repl.Pamp.1992). The parties are John P. and Judith P. Howes (Howeses), Appellants–Defendants, and Equity Plus Consumer Finance and Mortgage Company, Ltd, a New Mexico Corporation (Equity Plus), Appellee–Plaintiff. The trial court found that Equity Plus had established affirmative defenses with respect to any liability which might otherwise be assessed as a result of the TILA claims but awarded the Howeses civil penalties under Sections 56–8–7, –8. The Howeses appeal the findings with regard to the TILA claims and Equity Plus cross-appeals the New Mexico statutory penalties awarded. After a careful analysis of TILA, as applied in this case, we reverse, in part, and remand the case for the awarding of civil penalties under 15 U.S.C. Section 1640(a)(2)(A)(i) pursuant to the guidelines set out herein. We affirm the cross-appeal.

### I

The Howeses entered into two real estate loan transactions with Equity Plus, one on August 26, 1988, and the other on November 9, 1989. The second was essentially a refinance of the first. The Howeses admitted the validity of the notes, mortgages, and underlying indebtedness for both transactions. The evidence established that there were four errors in the disclosure statements resulting in an incorrect statement of the "annual percentage rate" (APR). Equity Plus admitted to the conduct which resulted in the errors in calculation of the APR but raised the affirmative defenses of bona fide error, good faith compliance, and subsequent occurrence. Additionally, Equity Plus took the position that the Howeses could not recover penalties without proof that they had actually relied upon the disclosure statements.

### II

As a threshold consideration and a matter of first impression in New Mexico, we address whether or not the imposition of the civil penalty under § 1640(a)(2)(A)(i)

is mandatory for TILA violations. Since the Act is a remedial statute designed to protect borrowers who are viewed as not on equal footing with lenders, either in bargaining for credit terms or in knowledge of credit provisions, it "is to be liberally construed in favor of borrowers." *Bizier v. Globe Fin. Serv., Inc.*, 654 F.2d 1, 3 (1st Cir.1981). "A proven violation of the disclosure requirements is presumed to injure the borrower by frustrating the purpose of permitting consumers to compare various available credit terms." *Herrera v. First N. Sav. and Loan Ass'n*, 805 F.2d 896, 901 (10th Cir.1986) (citing *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3d Cir.1979)). Enforcement of TILA is referred to as a system of "strict liability in favor of consumers." *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3d Cir. 1980). Such a mandatory imposition of damages by courts "was intended by Congress to create a 'private attorney general' scheme of enforcement which would obviate the need for a large federal bureaucracy to perform such a task." *Steinbrecher v. Mid–Penn Consumer Discount Co. (In re Steinbrecher)*, 110 B.R. 155, 161 (Bankr. E.D.Pa.1990); *see Ives v. W.T. Grant Co.*, 522 F.2d 749 (2d Cir.1975). The cases, almost uniformly, hold that the civil penalty section mandatory, upon finding of a TILA violation. *Id.*, 110 B.R. at 161; *see Underwood v. American Home Mortgage Corp.*, 66 B.R. 656, 665 (Bankr.W.D.Va.1986). *But see Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 237 (10th Cir.1975), *rev'd*, 523 F.2d 1 (1975). It is unnecessary for the borrowers to demonstrate actual damages. Statutory penalties apply regardless of whether the borrower was misled or injured. *Herrera*, 805 F.2d at 901; *see Dzadovsky*, 593 F.2d at 539; *Hinkle v. Rock Springs Nat'l Bank*, 538 F.2d 295, 297 (10th Cir.1976); *Steinbrecher*, 110 B.R. at 161. We therefore hold that the civil penalty is mandatory and a showing of reliance or actual harm is not required.

### III

Within the TILA statutes, exceptions exist to the imposition of civil liability under § 1640. In this case, the trial court found that each of the errors committed by Equity Plus fell within one of these three exceptions—bona fide error, good faith compliance or subsequent occurrence.

### Bona Fide Error

The TILA statute provides for an affirmative defense of bona fide error in 15 U.S.C. § 1640(c). The *Herrera* case interprets the bona fide error defense, stating:

While defendant correctly points out that two different interpretations of § 1640(c) emerged in the 1970's—one view construing it to apply only to mistakes of a clerical or mathematical nature and the other construing § 1640(c) more broadly to encompass good faith efforts at compliance—Congress resolved this issue when it amended the Act by the Truth–In–Lending Simplification and Reform Act of 1980.... Congress clearly stated in its amendment of § 1640(c) that "[e]xamples of bona fide error include, but are not limited to clerical, calculation, computer malfunction and programming, and printing errors, *except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.*"

*Herrera*, 805 F.2d at 900.

In *Herrera* the lender did not print the disclosure of the APR in a "more conspicuous" manner as mandated by Regulation Z. 12 C.F.R. § 226.6(a) (1980). The court found that even though the lender had printed the term "annual percentage rate" in all capital letters on the "Notice to Customer Required by Federal Law," the technical violation that the term was not printed "more conspicuously" than thirty other terms on the disclosure statement, constituted a violation. *Herrera*, 805 F.2d at 900. The lender in *Herrera*, as here, pled bona fide error. That court found that such an error was not a clerical error but rather "an error of legal judgement", based upon a belief that the lender had complied with the Act. *Id.* at 901. The court then concluded that "defendant's failure to adopt a disclosure statement which

complied with TILA and Regulation Z requirements, *even if in good faith,* is not excusable under § 1640(c)." *Id.* (emphasis added).

■ In the first loan of August 28, 1988, Equity Plus incorrectly stated the balloon payment would be due on April 1, 1990, instead of the correct date of March 1, 1990. This error resulted in an incorrect statement of the APR and a violation was clearly established. We agree with the trial court that a mistake of one payment in calculating the balloon payment could be attributed to clerical error and constitute a bona fide error defense.

■ The remaining three errors, however, involved legal judgement rather than clerical error. In the second loan, prepaid interest in the amount of $1240.60 was not included in the finance charge on the disclosure statement. Prepaid interest is not excludable. That omission resulted in an incorrect statement of the APR and it was not a clerical error but rather a legal judgement.

In neither loan were attorney's fees included in the finance charge on the disclosure statement. Some fees charged by attorneys to prepare certain specific documents are excludable. 12 C.F.R. § 226.4(c)(7)(ii) (1993). Those documents are "deeds, mortgages, and reconveyance, settlement and similar documents." *Id.* In the instant case, the evidence did not establish that all of the attorney's fees were excludable; therefore a violation occurred.

■ In *First Acadiana Bank v. Federal Deposit Ins. Corp.,* 833 F.2d 548 (5th Cir.1987), the bank required a car loan borrower to employ a bank-approved attorney to prepare the chattel mortgage. The circuit court ruled: "Under the Act's definition, the attorneys' fees obviously constitute part of the finance charge. Payment of the fees was 'incident to the extension of credit,' because the Bank would not extend credit otherwise." *Id.* at 550. The case of *Celona v. Equitable National Bank (In Re Celona),* 90 B.R. 104 (Bankr.E.D.Pa. 1988), is factually closer to the case at bar. In that mortgage loan transaction, the

lender passed on to the borrower a fee charged by an attorney to review certain documents. The fee was not disclosed as part of the finance charge. In finding against the lender, the court stated: " '[O]nly those charges specifically exempted from inclusion in the 'finance charge' by statute or regulation may be excluded.' " *Id.* at 112 (quoting *Buford v. America Fin. Co.,* 333 F.Supp. 1243, 1247 (N.D.Ga.1971)). "Review of documents, in and of itself, is not a service itemized as excludable.... [E]xclusions from finance charges should be narrowly construed." *Id.* at 112. The fees charged by an attorney are to be included in the finance charge unless that type of fee is a specific statutory exclusion. Any exclusions from the finance charges should be narrowly construed. Evidence, here, established that a conscious decision was made to exclude "attorney's fees" and "prepaid interest" from inclusion in the finance charge on the disclosure statement. Since exclusion of "attorney's fees" and "prepaid interest" involve legal judgement as opposed to clerical error, the defense of bona fide error is inapplicable.

*Good Faith Compliance*

■ In addition, the trial court found that Equity Plus had established the affirmative defense of "good faith compliance" with regard to the prepaid interest. We disagree. The provision relied upon by Equity Plus is 15 U.S.C. § 1640(f) which states: "No provision of this section ... imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board...." 15 U.S.C. § 1640(f). "[T]he reference ... to 'any rule, regulation, or interpretation thereof by the Board' means those requirements of Truth in Lending that have become part of Regulation Z, 12 C.F.R. § 226." *Ives,* 522 F.2d at 758. "[U]nintentional or bona fide errors are not excused ... unless made in reliance on a 'rule, regulation, or interpretation' of the Federal Reserve Board." *Pennino v. Morris Kirschman & Co.,* 526 F.2d 367, 370 n. 3 (5th Cir.1976).

The relief provided under this section is available only in cases where there is a showing that the disclosure statement was prepared "in conformity with any rule, regulation, or interpretation [of the Board]." *Lowery v. Finance Am. Corp.,* 32 N.C.App. 174, 231 S.E.2d 904, 911 (1977) (quoting 15 U.S.C. § 1640(f)). Upon such a showing, the lender must then demonstrate that the "rule, regulation, or interpretation" which was relied upon is now invalid or no longer in force. *Id.* This reading of the "good faith compliance" section is supported by the history of § 1640(f) discussed in *Ives* in a statement by the Board of Governors of the Federal Reserve System: "At present, the civil liability provisions of section 130 [15 U.S.C. § 1640] do not necessarily preclude a finding of liability where the creditor has followed regulatory requirements which subsequently are held invalid. In order to avoid this inequity, a 'good faith reliance' provision is suggested for inclusion in the Act." *Ives,* 522 F.2d at 758 (quoting Board of Governors of the Federal Reserve System, Annual Report to Congress on Truth in Lending for the Year 1972, 14–15 (1973)). The evidence in this case does not demonstrate that the statement of Equity Plus was prepared in conformity with a "rule, regulation, or interpretation" of the Board. Neither was there a showing that a subsequently invalid "rule, regulation, or interpretation" was relied upon by Equity Plus.

### Subsequent Occurrence

At closing Equity Plus reduced the prepaid interest charge by $300.00. It was, in the first instance, incorrect not to include the prepaid interest in the finance charge and a second error was committed when Equity Plus reduced the prepaid interest charge but did not change the prepaid interest amount. This resulted in an incorrect disclosure. The trial court found that, although the violation had occurred, Equity Plus had established the affirmative defense of subsequent occurrence found in 15 U.S.C. § 1634. We disagree. In order for the $300.00 reduction to have been protected by the "subsequent occurrence" defense, the reduction would have had to

have been made subsequent to the closing of the loan transaction. The record demonstrates that here the reduction occurred during the closing rather than subsequent thereto.

## IV

The Howeses raise the issue of whether or not they are entitled to attorney's fees. "Plaintiffs as the prevailing parties in their action to enforce civil liability for violation of the Act are entitled to recover reasonable attorney's fees and costs. 15 U.S.C. § 1640(a)(3)." *Herrera,* 805 F.2d at 902; *see Lowery,* 231 S.E.2d at 912. We hold that the Howes' attorney is entitled to be awarded reasonable attorney's fees.

We agree with the finding of the trial court that Equity Plus was liable to the Howeses for civil penalties pursuant to Sections 56–8–7, –8. "The function of an appellate court is to view the evidence in a light most favorable to support the findings and conclusions of the trial court. The decision of the trial court will not be reversed unless it appears that its findings and conclusions cannot be sustained either by the evidence or the permissible inferences therefrom." *Albuquerque Nat'l Bank v. Albuquerque Ranch Estates, Inc.,* 99 N.M. 95, 106, 654 P.2d 548, 555 (1982); *Lujan v. Pendaries Properties, Inc.,* 96 N.M. 771, 774, 635 P.2d 580, 583 (1981). After reviewing the transcript, we find substantial evidence to support the findings and conclusions of the trial court that Equity Plus violated Sections 56–8–7, –8 and is liable for civil penalties. We, however, are not able to find support for the awarding of $6200 in late fees. We find in the pretrial order that the late fees, if payable, were stipulated to by the parties in the amount of $2880.42.

We remand this case to the district court for the awarding of TILA civil penalties and attorney's fees pursuant to this opinion. In addition, since the late fees of $6200 were incorrectly awarded by the trial court, that amount is set aside and late

fees in the amount of $2880.42 are awarded to Equity Plus.

IT IS SO ORDERED.

BACA AND FROST, JJ., concur.