OPINION OF THE COURT
Adam Seiden, J.
Claimant brought this proceeding to recover $500 allegedly due from defendants pursuant to the terms of a loan commitment. Defendants have answered and counterclaimed for a refund of $400 paid to plaintiff as part of their loan application. Both parties seek sanctions against one another based upon allegations of frivolous conduct. This case brings into issue the interpretation of defendants’ right of rescission pursuant to Regulation Z (12 CFR part 226) promulgated under the Truth in Lending Act (TILA) (15 USC § 1601 et seq.).
Defendants applied for a mortgage loan on their home at 2 Little Mountain Road, North Salem, New York, on May 14, 1996. Plaintiff issued a firm commitment to lend defendants $40,000. The loan commitment, which was accepted by defendants, stated pursuant to paragraph A that defendants would be required to pay all costs and disbursements including the bank’s attorney fee. It further stated that acceptance of the commitment was authorization for the bank to incur the expense.
The closing was scheduled for July 12, 1996 and did not take place. It is undisputed that the defendants refused to close the loan as a result of their desire not to escrow real property taxes on the property with plaintiff bank. Defendants stated that they were verbally led to believe that the escrow requirement of the commitment letter would be modified at closing in light of the fact that the loan was such a small amount compared to the value of the home. Plaintiff states that modification of the tax escrow requirements was never considered nor hinted at. The parties could not come to terms and the loan never consummated. At the closing on July 12, *537 1996, defendants exercised their rescission right. Apparently the defendants were handed their notice of right to cancel at the closing by the plaintiffs representatives and exercised it right then and there.
The bank is now arguing that the right to cancel under Regulation Z does not mature until the subject loan closes. Since the loan never closed, the purported exercise was improper. Without a proper rescission under Regulation Z, the requirement to pay attorney fees of the bank pursuant to the loan commitment would still be enforceable.
Defendants argue that they exercised their right of rescission in a proper and timely fashion and as a result should not be responsible to pay attorney fees and should be reimbursed the $400 they previously paid toward costs on the loan.
The question of whether rescission under TILA can be exercised when a closing never took place appears to be one of first impression. Research has not disclosed the discussion of this issue in either reported or unreported cases. In order to properly understand the legislation and regulations involved it is appropriate to examine the purposes and implementation of TILA and its accompanying Regulation Z.
TILA was passed by Congress as a means for consumers to be protected from the inequities in their negotiating position with respect to credit and loan institutions (Equity Plus Consumer Fin. & Mtge. Co. v Howes, 116 NM 151, 861 P2d 214 [1993]). The requirements under TILA make it possible for consumers to understand the ramifications of the extension of credit by requiring lenders to provide standard information as to the costs of credit including the annual percentage rate, fees, and requirements of repayment, thereby enabling potential borrowers to make intelligent, informed decisions (GAC Fin. Corp. v Burgess, 16 Wash App 758, 558 P2d 1386 [1977]). In view of the remedial nature of the legislation, it is liberally construed in favor of the consumer, and strictly enforced against creditors (Fairley v Turan-Foley Imports, 65 F3d 475 [5th Cir 1995]).
The right of rescission arises in the case of "any consumer credit transaction * * * in which a security interest * * * is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended” (15 USC § 1635 [a]). There are certain exceptions which are not relevant to the case at bar. The borrower is entitled to rescind the transaction "until midnight of the third business day following the consummation of the transaction or *538 the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title * * * whichever is later” (15 USC § 1635 [a]). The consumer can opt to rescind for any reason, or for no reason (National Consumer Law Center, Truth in Lending [3d ed 1995]).
The question raised in the case at bar is whether the right of rescission exists for consumers who did not close on the refinancing agreement. For the following reasons this court finds that the consumers did not lose their right to rescind by failing to close.
At the time that the consumers received the "firm commitment” from the bank, the bank was obligated under TILA to provide defendants with the required disclosures. In fact, the last page of the "firm commitment” is an acknowledgment signed by defendants that they received a completed truth-in-lending disclosure statement. Clearly, there is no question that the protections, afforded by TILA and its implementing Regulation Z were implicated. Thus, the next step is to examine the rescission requirements of TILA and Regulation Z.
TILA provides that in order to rescind, a consumer may exercise the right to rescind until midnight of the third business day following the latest of: (1) consummation of the transaction; (2) delivery of a proper notice of the right to rescind; or (3) delivery of all the material disclosures correctly made (15 USC § 1635 [a]; Regulation Z [12 CFR] § 226.15 [a] [3]; § 226.23 [a] [3]).
According to the plain language of the statute and regulation, there is no requirement that the transaction be consummated; the consummation merely provides a frame of reference from which the time for rescission may be calculated. In fact, the Official Staff Commentary even envisions a case where consummation occurs after the disclosures are received, and the start of the running of the three-day rescission period is delayed until the time of consummation (FRB Official Staff. Commentary to Regulation Z [12 CFR] § 226.23 [a]). There is no question that rescission is allowed in cases in which the delivery of material disclosures or the delivery of the required rescission notices never occurred (in fact, it extends the time to rescind to three years [see, e.g., In re Buckles, 189 Bankr 752 (1995); Kocsis v Pierce, 192 Mich App 92, 480 NW2d 598 (1991); In re Lombardi, 195 Bankr 569 (1996)]), so it follows that the right of rescission should exist in the instant case as well.
There is a case from the Court of Appeals of Michigan which, although factually very different from the case at bar, *539 concludes that where a consumer credit transaction was never "consummated” under Michigan law, the three-day right to rescind under TILA never began to run, and the consumer’s rescission rights were effective even against an assignee who was a holder in due course (Thomas v Leja, 187 Mich App 418, 468 NW2d 58 [1991]). In that case, the consumer had executed a promissory note along with a mortgage on residential property, and then canceled orally, rather than in writing, as required by TILA. The mortgage company seemingly honored the cancellation, never distributed the funds, and circulated an internal company memorandum indicating that the transaction had been canceled. However, it recorded the mortgage and assigned the note and mortgage to a holder in due course. Michigan’s Court of Appeals held that since the funds were never distributed to the consumer, he cannot be said to have been contractually obligated as a result of a credit transaction, and under Michigan law, a consummation never occurred. The court concluded that the consumer’s right to rescind the transaction, under TILA and Regulation Z remained effective, since the three-day period never began to run (supra, 187 Mich App, at 422-423, 468 NW2d, at 60-61). Thomas, therefore, allowed implementation of the right of a rescission even without the closing.
At the aborted closing, in the case at bar, when defendants said that they would not close under the circumstances, plaintiff’s agents gave the rescission notice to defendants and told them to sign it. This, in effect, told the defendants that they could rescind without first consummating the transaction. Furthermore, the language of the notice of right to cancel itself would lead defendants to believe that they were properly exercising their right of rescission. The notice does not say that the transaction must be consummated, but that the borrowers have three days from the "date of the transaction, which is July 12, 1996” in which to rescind. The notice states clearly that not only could defendants cancel until midnight of July 17, 1996, but that within 20 calendar days after receiving the notice, plaintiff herein must return any money or property that was given to it or anyone else in connection with the transaction. It is undisputed that plaintiff received the signed notice from defendants canceling the transaction on July 12, 1996. It would not be tenable to maintain that plaintiff could successfully misuse the notice of right to cancel, which is intended to protect consumers, to deprive defendants of their rights under TILA. Further, rescission is an equitable doctrine. Nothing in TILA or Regulation Z limits a court of equity from preventing *540 an inequitable or improper result from the exercise of the statutory rescission. Courts have applied principle of equity to the TILA grant of rescission (see, Powers v Sims & Levin, 542 F2d 1216 [4th Cir 1976]). Accordingly, the plaintiff must be bound by its own notice of rescission.
Another issue that needs to be addressed is whether the "firm commitment” constitutes a "consummation” under New York law. There is a case which holds that under New York law the consumer’s acceptance of a lender’s commitment offer constitutes a binding contract, which constitutes a consummation under TILA (Murphy v Empire of Am., 746 F2d 931, 934 [2d Cir 1984]). That case relies upon an Appellate Division, Third Department case, which rejected a borrower’s claim that the transaction had not been consummated until the execution of the note and mortgage, and held that "[a] contractual relationship is created between creditor and customer when the former proffers credit and the latter accepts irrespective of the time of performance of the contract itself’ (Gramatan Home Investors Corp. v Mack, 70 AD2d 288, 291-292 [3d Dept 1979]). In the case at bar, the commitment states the name of the lender and borrower, provides a date, rate of interest, term of loan, and amount of loan, as well as many other particulars. There were several conditions which were required to be met which could possibly have caused the commitment not to be binding, however, since the essential elements were included, it is likely pursuant to Gramatan (supra) that the commitment would be considered a "consummation” under New York law. The outcome of this case does not differ as a result since the time in which to rescind did not begin to run until the defendants received the notice of the right to cancel. The rescission was still timely.
As a result of the foregoing, the complaint is dismissed and defendants are awarded judgment of $400 on the counterclaim plus costs. The cross applications for sanctions are denied as neither party’s position was frivolous or intended to waste time.