**John C. DRENNAN, Jr., etc., Plaintiff,**

**v.**

**VAN RU CREDIT CORPORATION, et al., Defendants.**

No. 96 C 5789.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 30, 1996.

O. Randolph Bragg, Chicago, IL, for Plaintiff.

John M. Hynes & Benjamin E. Patterson of Clausen Miller P.C., Chicago, IL, for Defendants.

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

John Drennan, Jr. ("Drennan") has brought a putative class action against Van Ru Credit Corporation ("Van Ru") and its principal Albert Rubin ("Rubin"), charging violations of the Fair Debt Collection Practices Act ("Act," 15 U.S.C. §§ 1692 to 1692o [1]) and invoking federal jurisdiction based on the federal questions thus involved. Van Ru and Rubin have moved under Fed. R.Civ.P. ("Rule") 12(b)(6) to dismiss the action, and their motion has been fully briefed and is ready for decision.[2] For the reasons stated in this memorandum opinion and order, the motion is denied and Van Ru and Rubin are ordered to answer Drennan's Complaint.

Each side recognizes the basic Rule 12(b)(6) proposition that Drennan's allegations are to be accepted as true and that dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), relying on *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). And in part because the Rules embody a notice-pleading rather than fact-pleading regime, plaintiff Drennan is also entitled to have his well-pleaded allegations construed in the most favorable light (*Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir.1995)).

In this instance Drennan targets two notices that he received from Van Ru as assertedly Act-violative: its September 14, 1995 "LEGAL REVIEW NOTIFICATION" ("September Notice," Complaint Ex. A, attached as Ex. 1 to this opinion) and its December 16, 1995 "NOTICE OF POSSIBLE WAGE GARNISHMENT" ("December

Notice," Complaint Ex. B, attached as Ex. 2 to this opinion). Each Notice addressed Drennan's assertedly unpaid balance on a student loan obtained through NorthStar Guarantee, Inc. Although Drennan did not pay the alleged loan balance after receipt of either of the two Notices,[3] no enforcement action of any kind was undertaken during the year-long period that elapsed between the September Notice and the September 11, 1996 filing of the Complaint (a period of nine months when measured from the date of the December Notice).

According to Drennan, that course of conduct involves violations of several provisions of the Act—Sections 1692e(4), (5), (9) and (13). And Rubin is joined as a defendant on the premise that as a Van Ru executive officer he "direct[s] its policies, practices and operations" (Complaint ¶ 29).

*Viability of the Complaint*

Both the September Notice and the December Notice must be measured against the yardstick of the "unsophisticated consumer," as announced by our Court of Appeals in *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994) and reconfirmed earlier this year in an action successfully brought against Van Ru and Rubin themselves, *Avila v. Rubin*, 84 F.3d 222 (7th Cir.1996). As *Avila, id.* at 226 said of the applicable test:

> After some anguish, we held in *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994), that claims against debt collectors under the FDCPA are to be viewed through the eyes of the "unsophisticated consumer." We rejected what may be viewed as a somewhat lesser standard—the "least sophisticated consumer," used by other courts. We reiterate our standard today, but we don't want to

---

1. Citations to the Act will take the form "Section ——," referring to the numbering within Title 15 rather than to the Act's internal numbering.

2. Shortly before Drennan's responsive memorandum was due, he filed a motion and supporting memorandum seeking class certification under Rule 23(a) and (b)(3). Under the circumstances, however, it has appeared clearly preferable to address the motion to dismiss first.

3. Nothing is said in the Complaint about whether Drennan actually owes the amount claimed (or any lesser amount). That is really not relevant for Act purposes—indeed, as explained later, the debt collector's *inaction* following a notice that does not trigger payment may evidence a violation of the Act's provisions.

be involved in the splitting of split hairs. Anyway it's viewed, the standard is low, close to the bottom of the sophistication meter.

■ Looked at through that "unsophisticated consumer" lens, Van Ru's September Notice flunks the test. What is such a consumer to understand as the meaning of "Legal Review Notification," the caption of that first document that was sent to Drennan? Here are the first three sentences of the notification that come immediately below that caption:

> You have been given sufficient time to resolve this matter. The legal review process may may result in a recommendation to your creditor to file a lawsuit against you. Should our client authorize suit, your account may be referred to an attorney in your county to file suit at once for the above claim.

And importantly, after that statement and the ensuing detailed recital of the perils that the debtor faces if a judgment is then obtained, the notification makes its message unmistakable:

> Please contact this office upon receipt of this notice or mail full payment to *avoid the above.*

Just what is meant by "[t]he legal review process," a term that is puzzling even to anyone schooled in the law and that surely must be an arcane mystery to the layperson? And although defendants urge that everything from there on is both conditional ("may result," "may be referred" and so on) and is successively so (as in the hip bone is connected to the thigh bone, and so on), defendants'

characterization of the communication as a whole as not conveying a threat to the paradigmatic unsophisticated consumer is just not persuasive.

■ Unsophisticated consumers to whom Van Ru addresses such communications do not open their mail with Strunk and White's *The Elements of Style* at their elbows (for that matter, who does?).[4] To the archetypical person whom Congress sought to protect by the Act, Van Ru's September Notice had to appear as an ominous harbinger of things to come unless the addressee complied with the directive of what had to be done "to avoid the above"—"the above" being the notification's recital of the successive parade of horribles that would follow should the "legal review process" trigger the first and ensuing steps in that process.[5]

Section 1692e(5) defines as a violation of the Act:

> The threat to take any action ... that is not intended to be taken.

To the "unsophisticated consumer" the September Notice surely conveyed a threat—the realistic rather than any hypothetical prospect of enforcement action if payment were not made (see n. 5)[6]—and the reasonable inference from Van Ru's having left Drennan waiting for the other shoe to drop during the ensuing months is that the threatened action was "not intended to be taken." As for Rubin individually, the reasonable inference from Complaint ¶ 29 (though stated in conclusory fashion, as notice-pleading principles permit) supports his individual inclusion as a

**4.** Defendants Mem. 6–7 cites William Strunk & E.B. White, *The Elements of Style* 20 (3d ed.1979) for the proposition that such qualifying terms should be saved by writers "for situations involving real uncertainty." Strunk and White do not, of course, write for the unsophisticated consumer, let alone their analyzing the impact on such unsophisticated readers who receive communications such as those involved here.

**5.** Defendants' characterization of the steps set out in the September Notice as "conditional" rings hollow. Surely the reasonable reading of the notification is that without the requested affirmative response ("Please contact this office upon receipt of this notice or mail full payment

to avoid the above"), the natural consequence of the purported "legal review process" would be an affirmative recommendation to the creditor to file suit, followed by the creditor's then authorizing that action to be taken. There is not a hint of what considerations would occasion anything other than those inexorable results if the addressee did not comply.

**6.** This Court has reviewed all of the authorities to which Van Ru and Rubin point in an effort to avoid this conclusion. None of them (including the recent opinion in *Sturdevant v. Jolas*, 942 F.Supp..426, 430–31 (W.D.Wis.1996)) carries the day for the communications at issue here.

defendant in the same way that Avila found him to be a proper target.[7]

Like the lawyer who views the Rules of Professional Conduct from the perspective that they mark out lines of impermissible conduct that are intended to be approached asymptotically—by coming as close as possible to engaging in actual impropriety, without quite touching the lines [8]—so Rubin and Van Ru appear constantly to be pushing the envelope of the Act in hopes that their questionable activities will stay on the legal side rather than crossing over into illegality. Wholly apart from the unwholesomeness of such an approach in purely social terms (a consideration that may inform Congress' enactments, but that does not constitute the decisional criterion for this Court), there is little wonder that risk-takers of that nature have more than once come too close to the edge, falling off of the cliff of legality into the canyon of unlawfulness (as the decision in *Avila* graphically demonstrates).

As disclosed by *Avila*, Rubin is regrettably an Illinois lawyer. Although some of the things that have made him a discredit to the profession were curbed in *Avila*, he and his corporation continue (to shift metaphors) to play chicken with the Act. What is disclosed by the Complaint depicts additional collisions with its terms by both of the challenged documents:

1. This opinion's discussion up to this point has already identified the "threat" implicit in the September Notice within the meaning of Act § 1692e(5).

2. As for the December Notice, it plainly (perhaps even more plainly) contains a "representation or implication that nonpayment of any debt will result in the ... garnishment ... of ... wages" (Act § 1692e(4)): Its opening statement ("If you are currently employed, your wages may now be withheld monthly to pay your defaulted student loan, pursuant to Federal Law") is fairly understood by any unsophisticated consumer as a statement that wage garnishment is now a remedy available to creditor NorthStar Guarantee, Inc.[9]

3. Without question, the periods of inaction following the two Notices (one year after the September Notice, nine months after the December Notice) lead to the reasonable inference that Van Ru did not intend to take the threatened or implied action, as required by each of Sections 1692e(5) and (4).

Those things suffice to demonstrate the viability of the Complaint. Although this Court does not hold that any violations of Section 1692e(9) are involved, and although any claimed violation of Section 1692e(13) is doubtful at best, the Complaint itself clearly survives the current motion (as taught by *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir.1992), the failure to identify a legal theory of recovery—or even the inclusion of a wrong legal theory—does not affect the sustainability of a complaint).

### Conclusion

Because the motion to dismiss has been denied for the reasons stated here, both Van Ru and Rubin are ordered to answer the Complaint on or before January 14, 1997.

---

7. *Avila*, 84 F.3d at 224 described Van Ru and Rubin—who owns 80% of its stock (the remainder being owned by Rubin's son) and who is its chief executive officer—"as closely intertwined as lovers during an embrace." And as Complaint ¶ 29 further connotes, *Avila, id.* confirms:

> Rubin is involved in the creation and modification of form letters, the most critical part of the debt collection operation.

8. It does not require much experience or reading in the field of lawyer discipline to recognize the obvious: Lawyers who adopt that approach are the most likely candidates to have mistaken the relevant boundary lines and to find themselves on the wrong side of those lines.

9. Again to the unsophisticated consumer, that reading is surely reinforced by the December Notice's inclusion of the statement (albeit legally required):

> This is an attempt to collect a debt and any information obtained will be used to collect this debt.

It is also worth noting, though it is not essential to Drennan's claim, that the Notice is also seriously deficient as a full-disclosure document. Although it correctly refers to 20 U.S.C. § 1095a, it does not at all identify the conditions precedent to, or the conditions imposed on the pursuit of, garnishment proceedings that are set out in that statute—and certainly the "unsophisticated consumer" does not have the United States Code at hand or committed to memory either.

862

This Court vacates the presently-set January 3 status date and instead sets a status hearing at 9:15 a.m. January 21, 1997, at which point the parties should be prepared to discuss further proceedings relating to Drennan's Rule 23 motion for class certification.

EXHIBIT A

*THIS HAS BEEN SENT TO YOU BY A COLLECTION AGENCY*

 **Van Ru Credit Corporation**

10024 SKOKIE BLVD., P.O. BOX #1109
SKOKIE, IL 60076-8109
1-800-362-2234 EXT. #9999

Si usted tiene algun problema en entender este documento, por favor comuniquese con nuestra oficina al:
1-800-362-2234

| | |
|---|---|
| JOHN C DRENNAN JR | 9/14/95 |
| FILE #: 045381 | M70 |

| CREDITOR(S) | ACCOUNT # | AMOUNT |
|---|---|---|
| NORTHSTAR GUARANTEE, INC | 379845505-16181*1 | 3694.41 |

### LEGAL REVIEW NOTIFICATION

You have been given sufficient time to resolve this matter. The legal review process has been initiated on your debt. The legal review process may may result in a recommendation to your creditor to file a lawsuit against you. Should our client authorize suit, your account may be referred to an attorney in your county to file suit at once for the above claim. If a judgement is obtained against you, you may become liable for additional collection costs, court costs, attorney's fees, where applicable, and interest after judgement. Interest and additional installment payments will be added to your account, as permitted by law or contract, until final payment is received. If your creditor obtains a judgment, unless state and federal law protects you from the following, the cout may order:

1. Garnishment of your wages;
2. Attachment and levies on your real and personal property; and/or
3. Other methods to enforce such judgment.

Upon refusal to pay any judgment, supplementary proceedings may follow and the court may order judgment satisfied out of any assets that may be discovered. The court may also, where necessary and where authorized by local law, issue an injuction to prevent the unlawful conveyance of the defendants assets and satisfaction of the judgement out of the same. Please contact this office upon receipt of this notice or mail full payment to avoid the above. This is an attempt to collect a debt and any information obtained may be used to collect this debt.
Van Ru Credit Corporation
5270 Main.Street
Maple Plain, MN 55359

**RETURN THIS PORTION WITH YOUR PAYMENT TO:**

 **VAN RU CREDIT CORP.**
PAYMENT PROCESSING CENTER
P.O. BOX #46249
LINCOLNWOOD, IL 60646-0249

```
#BWNBLDM ********* 3-DIGIT 554
#A045381O002#  NST11V T020P002 01614
JOHN C DRENNAN JR                        FILE #: 045381
2347 ARTHUR ST NE                        CURRENT BALANCE: $3694.41

MINNEAPOLIS, MN.  55418-3912             DATE:  9/14/95
```

M70V

EXHIBIT B

*THIS HAS BEEN SENT TO YOU BY A COLLECTION AGENCY*

 # Van Ru Credit Corporation

10024 SKOKIE BLVD., P.O. BOX #1109
SKOKIE, IL 60076-8109
1-800-477-0777 EXT. #8171

Si usted tiene algun problema en entender este documento, por favor comuniquese con nuestra oficina al
1-800-477-0777 Extencion Dos, Cero, Cuatro, Dos.

JOHN C DRENNAN JR                                              12/16/95
FILE #: 045381                                                 B69

| CREDITOR(S) | ACCOUNT # | AMOUNT |
|---|---|---|
| NORTHSTAR GUARANTEE, INC | 379845505-16181*1 | 3759.51 |

# NOTICE OF POSSIBLE WAGE GARNISHMENT

If you are currently employed, your wages may now be withheld monthly to pay your defaulted student loan, pursuant to Federal Law (Public Law 102-164, 20 U.S.C. S 1095a et seq).

There are other avenues available to you which you may not be aware of

The Federal Consolidation Program can remove your account from      ult status, upgrade your credit standing and allow you to be eligible for Title IV benefits on      ɡａ.n.

Call our office at 1-800-477-0777.

This is an attempt to collect a debt and any information obtained will be used to collect this debt.

Van Ru Credit Corporation
5270 Main Street
Maple Plain, MN 55359

RETURN THIS PORTION WITH YOUR PAYMENT TO:

 **VAN RU CREDIT CORP.**
PAYMENT PROCESSING CENTER
P.O. BOX #46249
LINCOLNWOOD, IL 60646-0249

#BWNBLDM ******* 5-DIGIT 55418
#A04538I0002#  NST11V T024P013 02079
JOHN C DRENNAN JR                        FILE #: 045381
2347 ARTHUR ST NE                        CURRENT BALANCE: $3759.51

MINNEAPOLIS, MN. 55418-3912                  DATE: 12/16/95