109 F.3d 338
 65 USLW 2618
 Stella B. MACE f/k/a Stella B. Servera, on behalf of herself
and all others similarly situated, Plaintiff-Appellant,
v.
VAN RU CREDIT CORPORATION, Roger J. Rubin, and Albert G.
Rubin, Defendants-Appellees.
 No. 96-1206.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 13, 1996.
Decided March 17, 1997.
 
 Daniel A. Edelman, Cathleen M. Combs, Michelle A. Weinberg (argued), Edelman & Combs, Chicago, IL, for plaintiff-appellant.
 George W. Spellmire, Bruce L. Carmen (argued), D. Kendall Griffith, David M. Schultz, Hinshaw & Culbertson, Daniel P. Shapiro, Michael J. Small, Steven A. Levy (argued), Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Chicago, IL, for defendants-appellees.
 Before CUDAHY, KANNE, and ROVNER, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 The question before us is whether the existence of a damage limitation or cap in the Fair Debt Collection Practices Act (FDCPA) has a bearing on the sort of class action that may be brought under that statute. Specifically at issue is whether the district court correctly found an implicit qualification to the statute's plain language, requiring the class to be nation-wide.
 
 
 2
 We review the district court's denial of class action certification under the FDCPA and under the Wisconsin Consumer Act. 15 U.S.C. § 1692 et seq.; Wis. Stat. § 427.104(l ). The district court had jurisdiction under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Although denials of class certification are generally not independently appealable, Coopers & Lybrand v. Livesay, 437 U.S. 463, 470, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) ("orders relating to class certification are not independently appealable under [28 U.S.C.] § 1291 prior to judgment"), the district court has certified an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), to which we have assented. See Hewitt v. Joyce Beverages, 721 F.2d 625 (7th Cir.1983); Susman v. Lincoln Am. Corp., 561 F.2d 86, 87 n. 1 (7th Cir.1977).
 
 
 3
 Ordinarily a denial of class certification is reviewable for abuse of discretion. 28 U.S.C. § 1292(b); Hewitt, 721 F.2d at 627; Susman, 561 F.2d at 90. But here the district court has determined that the FDCPA bars serial class action suits. This determination is purely legal, and we review de novo.
 
 
 4
 Because we have not yet been presented with a series of class actions and the central determination of the district court is therefore at best premature, we find no reason to go beyond the plain language of the statute. We therefore vacate and remand.
 
 I. Factual Background
 
 5
 Stella B. Mace brought this action on behalf of herself and all others residing in Wisconsin who received certain collection letters from Van Ru Credit Corporation, Roger J. Rubin or Albert G. Rubin (collectively "Van Ru"). Van Ru is one of several business entities owned in whole or in major part by Roger Rubin. The intertwined nature of these debt collection businesses and attorney Roger Rubin's law firm is fully described in Avila v. Rubin, 84 F.3d 222 (7th Cir.1996).
 
 
 6
 Mace alleges that Van Ru mailed eleven different collection letters that violated the FDCPA. 15 U.S.C. § 1692. The alleged violations include (1) collection letters mailed over the printed signature of an attorney when no attorney was involved in sending the letters or in verifying the creditor's claim; (2) collection letters demanding payment within the thirty day validation period upon the threat of "additional proceedings" or a "civil suit"; (3) collection letters containing language that overshadowed and contradicted the statutorily required thirty day notice of the consumer's right to verification of the debt; and (4) collection letters that threatened action that Van Ru and Rubin did not intend to take and could not have taken legally.
 
 
 7
 This is not Van Ru's first encounter with the FDCPA. See Avila, 84 F.3d 222; Drennan v. Van Ru Credit Corp., 950 F.Supp. 858 (N.D.Ill.1996); Sower v. Van Ru Fin. Servs., Inc., 1995 WL 870853 (D.Minn.1995); Woolfolk v. Van Ru Credit Corp., 783 F.Supp. 724 (D.Conn.1990); Bitume v. Van Ru Credit Corp., 1990 WL 129580 (N.D.Ill.1990). We recently upheld a state-limited (to Connecticut) class action under the FDCPA against Van Ru and Roger Rubin (Van Ru's principal owner). Avila, 84 F.3d 222. In the Avila proceedings, we affirmed a district court finding that Rubin and Van Ru had violated the FDCPA by using certain form collection letters. Id. at 229. Despite losing the Avila litigation, Rubin and Van Ru allegedly maintained their debt collection practices unchanged for at least some period of time, giving rise to some of the claims at issue in this lawsuit. Other claims in the present suit derive from letters mailed at about the same time as in Avila, but in Wisconsin rather than in Connecticut.[1]
 
 
 8
 II. Availability of a Class Action Under the FDCPA
 
 
 9
 The FDCPA was enacted in part "to eliminate abusive debt collection practices by debt collectors...." 15 U.S.C. § 1692(e). The statute is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt. Baker v. G.C. Servs. Corp., 677 F.2d 775, 777 (9th Cir.1982). The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Any person" includes attorneys who regularly collect debts. Jenkins v. Heintz, 25 F.3d 536 (7th Cir.1994), aff'd. 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). If Mace's allegations are correct, Van Ru has violated the FDCPA.
 
 
 10
 Given that proposition, our only task on appeal is to determine whether the FDCPA authorizes state-wide (in contrast to nation-wide) class actions. We note first that we know of no authority requiring the participation of the broadest possible class. On the contrary, the class requirements found in the Federal Rules of Civil Procedure encourage rather specific and limited classes. Fed.R.Civ.P. 23. The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class.
 
 
 11
 Class certification, involving as it does a variety of factors, is ordinarily a matter for the discretion of the district court. Here, however, the district court decided to deny certification, not based on a factual problem raised by the class definition,[2] but on the legal ground that the FDCPA's limitation of damages impliedly precludes certification limited to a state. The court reasoned that the damage cap was intended to place a limit on total liability, and that allowing state-by-state suits to proceed would nullify the damage cap. Thus, to make the damage limitation meaningful a nation-wide class was required. In addition, because the cap amount was relatively small the members of a large nation-wide class would receive only a de minimis recovery. The de minimis nature of the recovery, in turn, indicated that the class action mechanism was "not a superior method of adjudication." This conclusion depended on a finding that the recovery of the "individual class members would be smaller than the amount recoverable in individual actions and the administrative costs of a class action would be significant." Memo. Or. at 28.
 
 
 12
 A. Damage Caps in the Fair Debt Collection Practices Act and in the Truth In Lending Act
 
 The FDCPA provides that:
 
 13
 (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
 
 
 14
 (1) any actual damage sustained by such person as a result of such failure;
 
 
 15
 (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
 
 
 16
 (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
 
 
 17
 (3) ... the costs of the action, together with a reasonable attorney's fee ...
 
 
 18
 15 U.S.C. § 1692k (emphasis added).
 
 
 19
 Statutes like the Truth In Lending Act (TILA) include similar language, but with one crucial difference. TILA provides that "the total recovery ... in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor." Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(B) (emphasis added); see also Electronic Fund Transfer Act, 15 U.S.C. § 1693m(a)(2)(B) (substituting "person" for "creditor"); Consumer Leasing Act, 15 U.S.C. § 1667d (incorporating 15 U.S.C. § 1640). TILA's reference to a "series of class actions" is conspicuously absent from the FDCPA.
 
 
 20
 The defendants argue that we should read the FDCPA as if the "series of class actions" language were part of the statute. This contention is based first on the circumstance that, prior to the Truth in Lending Simplification and Reform Act of 1980 (Reform Act), the damage cap provisions of TILA and the FDCPA contained identical language; neither included the "series of class actions" language. Pub.L. No. 96-221, tit. VI, Mar. 31, 1980, 94 Stat. 168. The Reform Act added the "series of class actions" language to TILA but not to the FDCPA. The defendants then argue that this amendment to TILA did not change the law; rather it clarified it. The amendment made explicit what was formerly implied. Citing Herrera v. First N. Sav. & Loan Ass'n, 805 F.2d 896, 901 (10th Cir.1986), the defendants point to the absence of any indication in the legislative history of a congressional intent to change TILA in 1980; this absence of comment from the legislative history, they argue, suggests that the Reform Act amendment only clarified the law. The defendants then infer that Congress' original intent in enacting TILA was to apply the cap to a "series of class actions." Id. (citing Brown v. Marquette Sav. & Loan Ass'n, 686 F.2d 608, 615 (7th Cir.1982)). From these premises, the defendants conclude that, since the language of TILA and the FDCPA was identical before the Reform Act, Congress' intent in both these two acts was the same--to apply the cap to a "series of class actions." Thus the application of the damage cap to a "series of class actions," which appears only in the amended version of TILA, should be read back into the original version of TILA as well as (importantly for the present decision) into the original version of the FDCPA (which is still unmodified).
 
 
 21
 But divining congressional intent from an absence of expression is a quagmire that we must try to avoid. The plain language of the statute ordinarily controls. Jenkins v. Heintz, 25 F.3d 536, 539 (7th Cir.1994), aff'd. 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) ("We must faithfully apply the law as Congress drafted it."). The defendants argue, and the district court agrees, that the FDCPA is one of those " 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' " United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). We disagree.
 
 
 22
 The Truth In Lending Act and the Fair Debt Collection Practices Act are related statutes. Both appear under the capacious umbrella of the Consumer Credit Protection Act. 15 U.S.C. § 1601 et seq. Yet they are different. TILA is found in the Consumer Credit Cost Disclosure subchapter; the FDCPA is found in the Debt Collection Practices subchapter. The Congressional intent in enacting each subchapter is somewhat different. The Consumer Credit Cost Disclosure framework was designed (1) to foster competition among creditors, and (2) to ensure that consumers were adequately informed about the credit terms in an agreement. Thus the relevant statement of Congressional purpose provides:
 
 
 23
 (a) ... economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit.... It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit,....
 
 
 24
 15 U.S.C. § 1601(a). The FDCPA, on the other hand, was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life. Here the statement of purpose provides:
 
 
 25
 (a) ... Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
 
 
 26
 ....
 
 
 27
 (e) It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors,
 
 
 28
 ....
 
 
 29
 15 U.S.C. § 1692(a), (e). This objective of curbing abusive debt collection practices therefore distinguishes the FDCPA from TILA. Although we do not believe the matter need be decided at this point (since multiple or serial class actions are not before us), the reference in 15 U.S.C. § 1692(e) to abusive practices does not necessarily suggest that Congress, by failing to amend the FDCPA, intended that the damage caps in that statute should apply to a series of actions. Actually, Congress' choice not to revise the FDCPA might indicate, if anything, an intent not to modify or clarify the FDCPA (in the way that TILA was modified). Although we refrain from deciding the matter, we believe that construing the FDCPA in accordance with its plain language may best honor its drafters' intent.
 
 
 30
 The defendants, however, advance a policy argument, from which the district court constructed a requirement for a nationwide class. The district court reasoned that, if the damage cap of $500,000 can be applied anew to a series of state-wide (or otherwise limited) class actions, the damage limitation would become meaningless. This contention may be correct as far as it goes, although there is, of course, no way of telling whether such repeated class actions are possible or likely, here or generally. The other side of the coin is that to require a nation-wide class as the district court did here brings with it other problems that will be discussed later. There are other possible problems with the district court's reasoning. The FDCPA has a short, one-year statute of limitations making multiple lawsuits more difficult. Further, if a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations. Given the uncertainty of those policy considerations, there is no compelling reason to ignore the plain words of the statute. In any event, the case before us does not now present multiple or serial class actions to recover for the same misconduct. Hence, it would be premature to require a nation-wide class at this juncture. If and when multiple serial class actions are presented, it will be time enough to rule on such a pattern. At this point, there is no persuasive reason to require a nation-wide class.
 
 B. De Minimis Recovery
 
 31
 After prematurely reading a nation-wide class requirement into the FDCPA, the district court calculated the possible recovery. Because the most recent financial statements of the defendants (provided to the court in Avila) suggest a net worth of approximately $11 million, the damage cap (of one percent) would limit the class's recovery to a little over $100,000. The Wisconsin class was estimated to comprise 8,340 members. Extrapolating from this number, the district court posited a nation-wide class as large as 400,000. Such a class would result in a recovery per class member of only 28 cents, Memo. Or. at 27, as opposed to the projected $12 for each Wisconsin-only class member. The district court held that where "the recovery per class member would be de minimis and ... the administrative costs would be unduly burdensome ... [A] class action is not superior to other possible methods of fair and efficient adjudication." Memo. Or. at 29.
 
 
 32
 Since we have not decided that the FDCPA requires a nation-wide class, the district court's concerns about a de minimis recovery are currently moot. But even if a nation-wide class were appropriate, we believe that a de minimis recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.
 
 
 33
 True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.
 
 
 34
 The attorney's fees provision of the FDCPA[3] is another factor that must be considered in connection with a de minimis bar. An attorney would presumably not take a contingency fee case where the projected recovery was $3.00 (leaving the attorney with a $1.00 fee). This, of course, is why some statutes allow for attorney's fees even when the plaintiff's monetary award is nominal. See 15 U.S.C. § 1692k(a)(3). The attorney's fee provision makes the class action more likely to proceed, thereby helping to deter future violations. When individual class members are offered the right and opportunity to opt out of the class action, the statutory language "without regard to a minimum individual recovery" generally controls. 15 U.S.C. § 1692k(a)(2)(B).[4] In the present posture of the case, the de minimis issue is not before us, but it might arise in some form on remand.
 
 III. Cy Pres
 
 35
 Mace offers the availability of cy pres recovery as an alternative ground for class certification. Given that we have already found that a state-wide class action is sustainable and that a de minimis recovery does not bar certification, the issue of cy pres availability is no longer of concern. Nevertheless, because it is important to stress that cy pres recovery should be reserved for unusual circumstances, we briefly address Mace's arguments.
 
 
 36
 Cy pres, or fluid, recovery is a procedural device that distributes money damages either through a market system (e.g., by reducing charges that were previously excessive), or through project funding (the project being designed to benefit the members of the class). Simer v. Rios, 661 F.2d 655, 675 (7th Cir.1981). Cy pres recovery "is used where the individuals injured are not likely to come forward and prove their claims or cannot be given notice of the case." Id. at 675. Cy pres recovery is thus ideal for circumstances in which it is difficult or impossible to identify the persons to whom damages should be assigned or distributed. Here, damages, though small, would not be either difficult to assign or difficult to distribute. Further, there is no reason, when the injured parties can be identified, to deny them even a small recovery in favor of disbursement through some other means.[5]
 
 IV. Wisconsin Consumer Act
 
 37
 Mace has also attempted to sue under the Wisconsin counterpart to the FDCPA, the Wisconsin Consumer Act, § 427.104(WCA). The WCA requires thirty days' notice prior to commencement of an action.[6] Mace has not offered proof that she complied with the notice provision,[7] and the defendants claim to have no record of receipt of notice. Van Ru argues that the notice requirement of the WCA is substantive and that the class cannot be certified under the WCA because the plaintiff failed to comply. The plaintiff argues that the notice requirement is merely procedural and thus is without effect. The district court found that the notice provision was an "integral part of [the] state substantive statute" barring the certification of a class action where the plaintiff has failed to provide the proper notice, and reasoned that failure to comply means that the would-be plaintiff "does not have a substantive right to bring a class action suit for damages." Memo Or. at 5, 4.
 
 
 38
 Federal courts in diversity actions apply state substantive law and federal procedural law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). An exception was crafted for those cases in which the choice between a state and a federal procedural rule was outcome-determinative; then the state procedural rule was to be applied even in federal court. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Hanna v. Plumer limited the "outcome-determination" test of Guaranty Trust by distinguishing choice of law questions that involve the Federal Rules of Civil Procedure from those that do not. 380 U.S. 460, 467-68, 471-72, 85 S.Ct. 1136, 1143-45, 14 L.Ed.2d 8 (1965). The Federal Rules of Civil Procedure are governed by The Rules Enabling Act, 28 U.S.C. § 2072. The Enabling Act controls the choice between the Federal Rules and state law. The Enabling Act provides in pertinent part:
 
 
 39
 The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts and courts of appeals of the United States in civil actions....
 
 
 40
 Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury....
 
 
 41
 The Court in Hanna recognized that the "Erie rule is rooted in part in a realization that it would be unfair for the character of the result of a litigation materially to differ because the suit had been brought in federal court." Hanna, 380 U.S. at 467, 85 S.Ct. at 1141. The outcome-determination test was sharpened in Hanna in order to better "reference the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Id. at 468, 85 S.Ct. at 1142. As in Hanna, where the federal rule allowed the litigation to continue but the state rule compelled dismissal, in the case before us the "choice of the federal or state rule will at this point have a marked effect upon the outcome of the litigation, [but] the difference between the two rules would be of scant, if any, relevance to the choice of a forum." Id. at 469, 85 S.Ct. at 1142-43.
 
 
 42
 The Court in Hanna went further and held that, when the conflict was between one of the Federal Rules of Civil Procedure and a state rule, as we have indicated, the Enabling Act was to govern the question of which to apply. The court must apply the federal rule,
 
 
 43
 and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.
 
 
 44
 Hanna, 380 U.S. at 471, 85 S.Ct. at 1144.
 
 
 45
 Mace argues that the notice provision of the WCA is inapplicable in this diversity action because Rule 23 governs, and Rule 23 contains no notice requirement. But, more fundamentally, the notice provision of the WCA does not grant or deny a substantive right (the right to sue under the WCA), as the district court found. Rather, it affects the period within which that right can be exercised. If the purpose of the WCA's notice requirement is, as argued by the defendants, to prevent a suit from ever being filed (by encouraging the parties to reach an agreement extra-judicially), such a notice requirement is not substantive. See W.S.A. 426.110(4)(a)2. (c) ("no action for damages may be maintained under this section if an appropriate remedy ... is given, or agreed to be given ... within 30 days after receipt of such notice."). Whether the start of Mace's lawsuit was delayed by thirty days (under the WCA) or not at all (under Rule 23) is a matter of procedure, not substance. The application of Rule 23 does not abridge, enlarge or modify any substantive right. Therefore, Mace's WCA class action should be allowed to proceed.V. Conclusion
 
 
 46
 At least on the facts before us, the FDCPA does not require a nation-wide class. Nor does the FDCPA or Rule 23 necessarily require that the recovery per class member be more than de minimis for the lawsuit to go forward. The attorney's fees provision is designed in part to correct the disincentive created by the possibility of a small recovery. Cy pres recovery is reserved only for those unusual situations where victims are unidentifiable, disbursement would be impossible or, for some other reason, the disbursement of damages to victims would be impossible or inappropriate. By contrast, the FDCPA specifically requires that damages (that may consist of more than actual monetary loss) be paid.
 
 
 47
 We also find that the notice requirement of the Wisconsin Consumer Act is procedural, not substantive. Therefore Rule 23, with no notice provision, applies.
 
 
 48
 We therefore VACATE the district court's order with respect both to the FDCPA and with respect to the WCA and REMAND for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Form letters different from those sent to the plaintiffs in Mace were mailed to the plaintiffs in Avila. Some of the same provisions of the FDCPA were violated by each set of letters
 
 
 [2]
 In fact, the district court also denied certification on class definition grounds, including lack of typicality, lack of commonality and inadequacy of the class representative (due to an inability to finance the costs of providing notice to the class). Memo. Or. at 5-16. The plaintiff filed a motion to amend that was dismissed without prejudice; thus these other issues are not on appeal. For purposes of this appeal, we assume that these problems can be corrected
 
 
 [3]
 We have previously held that the language of the FDCPA makes an award of attorney's fees mandatory. Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir.1995) ("Because the FDCPA was violated ... the statute requires the award of costs and a reasonable attorney's fee ....") (quoting Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 28 (2d Cir.1989))
 
 
 [4]
 As part of its de minimis argument, Van Ru also attempts to rely on Johnson v. Eaton. That case discouraged FDCPA actions for which only a de minimis recovery is available. Van Ru Br. at 24; 80 F.3d 148 (5th Cir.1996). But Johnson concerns the availability of attorney's fees when the plaintiff proves a violation of the FDCPA but with no showing of actual damages. Because it apparently conflicts with Seventh Circuit authority on attorney's fees, Johnson is inapplicable. See Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir.1995)
 
 
 [5]
 Mace relies on Gammon v. GC Servs. Ltd. Partnership, 162 F.R.D. 313 (N.D.Ill.1995), in support of cy pres recovery under the FDCPA. This reliance is misplaced. The only discussion of cy pres recovery in Gammon is supposititious only:
 Gammon suggests that cy pres distribution of any damage award to the class would be appropriate should he prevail on the merits. GC Services has not disputed the appropriateness of this remedy. Therefore, we decline to address this issue at this stage of the litigation, but merely assume for purposes of this opinion that cy pres distribution of any damage award would provide a suitable remedy should Gammon prevail.
 Id. at 321 n. 9. Gammon provides no support for a cy pres recovery here. And to the extent that it provides for a cy pres recovery under the FDCPA in any circumstances, it is limited to its own unique facts.
 
 
 [6]
 The provision reads:
 (4)(a) At least 30 days or more prior to the commencement of a class action for damages pursuant to the provisions of this section, any party must:
 
 
 [1]
 Notify the person against whom an alleged cause of action is asserted of the particular alleged claim or violation; and
 
 
 [2]
 Demand that such person correct, or otherwise remedy the basis for the alleged claim
 (b) Such notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to such person at the place where the transaction occurred, such person's principal place of business within this state, or, if neither will affect actual notice, the department of financial institutions.
 W.S.A. § 426.110.
 
 
 [7]
 In her amended complaint, which was dismissed without prejudice by the trial court, Mace alleged compliance with the notice provision