Daniel A. Small, Mary N. Strimel, Michael D. Hausfeld, Cohen Milstein Hausfeld and Toll PLLC, Washington, DC, Elwood S. Simon, John P. Zuccarini, Elwood S. Simon and Associates PC, Brimingham, MI, for Plaintiff.

Robert A. Rosenfeld, Heller Ehrman White McAuliffe, San Francisco, CA, Charles B. Casper, Montgomery McCracken Walker and Rhoads, Philadelphia, PA, David B. Tulchin, Sullivan and Sullivan, Michael Lacovara, Sullivan and Cromwell, New York·City, Richard J. Wallis, Steven J. Aeschbacher, Thomas W. Burt, Microsoft Corporation, Redmond, WA, Jeffrey D. Herschman, Michael F. Brockmeyer, Piper Rudnick LLP, Baltimore, MD, for Defendant.

## In re MICROSOFT CORP. ANTITRUST LITIGATION.

### No. MDL 1332.

United States District Court,
D. Maryland.

Nov. 4, 2003.

## OPINION

MOTZ, District Judge.

On April 14, 2003, I issued an opinion ruling upon a motion for class certification filed by Franklin J. DeJulius and several other individual plaintiffs. These plaintiffs sought, *inter alia*, to represent monetary damages classes for the period November 10, 1995 to the present consisting of "All persons and entities who acquired a license in the United States, *other than for resale or re-*

*licensing,* for Microsoft [operating system and applications software], including upgrades, compatible with x86 computers, at a price determined by Microsoft." *(Emphasis added.) In re Microsoft Corp. Antitrust Litigation,* 214 F.R.D. 371, 374 (D.Md.2003). *("DeJulius").* Presently pending before me is another motion for class certification filed by Conway, Mackenzie & Dunleavy, P.C. ("CMD"), liquidation trustee for Inca Computer Company. CMD seeks to represent a monetary damages class for the period November 10, 1995 to the present consisting of "All persons and entities who acquired directly from Microsoft, in the United States, a license for Microsoft single-user operating system software, including upgrades, compatible with x86 personal computers, *other than for end use." (emphasis added.)*

CMD's motion for class certification will be denied.

## I.

Inca was an original equipment manufacturer ("OEM") that assembled and sold desktop and laptop computers through its own retail stores. Initially, Inca acquired Windows from various independent distributors of Microsoft products to pre-install and sell as part of its computers. On June 1, 1998, however, Inca signed a Windows OEM license agreement with Microsoft. Pursuant to that agreement, Inca paid Microsoft directly for licenses for operating systems. According to Microsoft sales figures, Inca's purchases of licenses in the 1999 fiscal year totaled $273,688.

In late 1998, Inca became insolvent and appointed CMD as a trustee to liquidate the corporation's assets for the benefit of its creditors. Although Inca itself never considered a suit against Microsoft, CMD authorized the commencement of this litigation in its role as liquidation trustee after being contacted by Elwood S. Simon & Associates, P.C., one of the plaintiff's law firms in this MDL action.[1] A complaint was filed in the United States District Court for the Northern District of California on July 26, 2002, and the case was subsequently transferred to this court for coordinated proceedings on October 9, 2002 by the Judicial Panel on Multidistrict Litigation.

## II.

■ In *DeJulius* I granted in part the individual plaintiffs' motion for class certification. However, I substantially narrowed the certification, allowing plaintiffs to represent only persons who had purchased licenses for Windows operating system software during the class period pursuant to a program known as shop.microsoft.com.[2] One of the groups of purchasers whom the *DeJulius* plaintiffs sought to represent were so-called "Enterprise customers," who were large-volume purchasers of licenses to Microsoft software. I denied this request. One of the reasons I gave for my holding is that the proposed inclusion of a class of Enterprise customers did not meet the "superiority" requirement of Fed.R.Civ.P. 23(b)(1)(3). In so ruling, I stated as follows:

> Class action treatment certainly is warranted under this provision where (as I find to be the case in regard to shop.microsoft.com purchasers) the claims of the class members are so small that, but for class action treatment, they would have little incentive to bring suit against an alleged wrongdoer. *See, e.g. Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997)). Likewise, a class action can also be a valuable management device where numerous suits involving substantial claims have been filed in different courts and involve predominant common questions. Securities fraud litigation is an example.

1. This is the same law firm that contacted Rhonda Henning, one of the proposed class representatives in *DeJulius.* Ms. Henning is the sister-in-law of one of the attorneys in the firm. I found her to be an inadequate class representative. 214 F.R.D. at 374.

2. I subsequently broadened the class to include persons who purchased Microsoft operating system software as "Full Packaged Product" in direct marketing campaigns during the class period.

The present case falls in neither of these categories. Because they are large volume purchasers, Enterprise customers have substantial claims and the incentive (as well as the resources) to institute individual actions if they choose to do so.[3] Absent the filing of such actions, I am not prepared to find that any "controversy" within the meaning of Rule 23(b)(3) exists between Enterprise customers and Microsoft. It may be that Enterprise customers believe they have received fair value for what they have paid. Further, even assuming that there is a controversy between Enterprise customers and Microsoft, plaintiffs have not established that a class action, as opposed to individual actions or the give and take of commercial negotiations in the marketplace, is the superior way to resolve it. Although the line cannot always be drawn clearly, there is a qualitative distinction between using Rule 23 for its constructive and just purposes, on the one hand, and converting into a source of lawyer-driven, rather than client-driven, litigation, on the other. To preserve the distinction in this case, a plaintiff class of individual consumers should not be expanded to include business customers who, through their own inaction, have evidenced a disinterest in their potential claims. . . .

214 F.R.D., at 376–77.

What I said in *DeJulius* applies with at least equal force here. Inca made direct purchases of licenses to Windows during only several months of 1998, which was only one of the eight years of the proposed class period. The amount paid by Inca for the software licenses it purchased constituted 1/400 of 1% of the total royalties paid to Microsoft by OEMs for licenses for operating systems software during the class period. This percentage is even less when Inca's purchases are compared to the royalties paid for licenses for operating systems software during the class period by all members of the putative class, which includes "Large Account Resellers," distributors, and direct resellers. As calculated by plaintiff's damages expert, Inca paid overcharges of $153,539, a minuscule portion of the billions in damages he opines the putative class suffered.

No OEM or other member of the putative class presently in business has instituted an antitrust overcharge suit against Microsoft.[4] Inca itself did not file such a suit while it was in business. The company has now been dissolved under Michigan law, and as of June 12, 2003, only $7,000 in cash remained in its bankruptcy estate. The idea for Inca to bring this action originated with plaintiff's counsel, and suit was instituted only after CMD, as Inca's liquidating trustee, was contacted by one of the plaintiff's law firms. CMD itself now has a vested interest in the outcome of the lawsuit because it is billing the Inca estate—at substantial hourly rates—for the time it devotes to the lawsuit, and it intends to be paid for that time out of any recovery that might be obtained.[5]

This set of circumstances epitomizes what I characterized in *DeJulius* as "lawyer-driven, rather than client-driven, litigation." 214 F.R.D. at 376. There is, on the present record, no evidence of any controversy that

---

3. Their incentive is enhanced because, if they prevail, Microsoft would have to pay their attorneys' fees and costs. *See* 15 U.S.C. § 15(a). [This footnote appeared in the quoted portion of *DeJulius*.]

4. CMD's counsel points out that the reason for this may be that the limitations period has been tolled while the class certification motion has been pending. If that is so and if at some time in the future members of the proposed class file individual actions, the class certification issue can be revisited.

5. The Seventh Circuit has recently held that except in unusual circumstances a conflict of interest arises out of a trustee in bankruptcy's fiduciary duty to creditors that prevents the trustee from

acting as a class representative. *Dechert v. Cadle Co.*, 333 F.3d 801 (7th Cir.2003). One of the "unusual circumstances" cited by the court is a situation where "the expected recovery of individual class members is substantial and only a fiduciary is available to be the class representative." *Id.* at 803. That is not the situation here because there are innumerable potential class representatives available to bring suit if they believe it is warranted. However, in light of my other holdings, I need not reach the question of whether CMD is barred from serving as a class representative solely by virtue of the fact that it is a bankruptcy trustee. Likewise, I need not reach the issue of whether CMD's claim is typical of the claims of the other purported class members.

any member of the proposed class other than CMD desires to litigate against Microsoft,[6] and the controversy between CMD and Microsoft was the brainchild of plaintiff's counsel. Moreover, it is clear that it is not their self-created CMD/Microsoft controversy but the theoretical controversies between other class members and Microsoft that plaintiff's counsel are really interested in pursuing. In that regard it is to be noted that plaintiff has demanded that Microsoft produce documents relating to the "twenty largest Resellers" and the "twenty largest OEMs." This demand reflects the true object of counsel's focus.

### III.

■ There is a second, related reason that class certification would be improper. During oral argument plaintiff's counsel conceded that under the Sherman Act there can be only one recovery for any overcharge resulting from Microsoft's antitrust violations. Thus, if the class proposed by CMD were certified and were to succeed in obtaining monetary damages from Microsoft, end-users who purchased licenses to Microsoft software through OEMs and other members of CMD's putative class would not be able to recover monetary damages from Microsoft for the alleged overcharges. Conversely, if the end-users who purchased licenses to Microsoft software through OEMs and other members of CMD's putative class are deemed to be direct purchasers under the *Illinois Brick* rule and are successful in obtaining monetary damages from Microsoft, the members of CMD's putative class cannot themselves recover such damages. This dual scenario places plaintiff's counsel in a position of irreconcilable conflict because they seek to represent in *DeJulius* an end-user class and they seek to represent here a class of OEMs and other persons who sold to the end-users.[7] In light of this conflict, the "adequacy" prong of the Rule 23 test clearly cannot be met.

During oral argument plaintiff's counsel had only two responses to their dilemma. First, they stated they would have two different teams of lawyers pursuing the *DeJulius* and CMD claims. This stipulation obviously does not cure the conflict. Second, they contended that they would forcefully pursue the monetary recovery and that it would then be the responsibility of the court to decide to whom the recovery should be given. This contention not only fails to cure the conflict but also reflects the "lawyer-driven" nature of this litigation. Because counsel themselves created the controversy and then searched for clients to pursue it, they were blinded to the conflict of their position in arguing that different groups of their clients are the ones entitled to recover damages. Counsel's skill, ingenuity, resourcefulness, and energy are self-evident, and their good faith is not in question. However, to countenance their approach to this litigation would be to tolerate a misuse of Rule 23 and pervert its salutary purposes.

A separate order denying CMD's motion for class certification is being entered herewith.

### ORDER

For the reasons stated in the accompanying Opinion, it is, this 4th day of November 2003

ORDERED that the motion for class certification filed by Conway, Mackenzie & Dunleavy, P.C. is denied.

---

**6.** Plaintiff's counsel speculate that other members of the proposed class have been intimidated from filing suit against Microsoft but they have presented no concrete evidence to support their assertion.

**7.** I have preliminarily approved a settlement of the end-user litigation, limiting recovery to persons who purchased software from Microsoft through direct marketing channels. However, the settlement agreement reserves plaintiffs' right to appeal the ruling I previously made that *Illinois Brick* bars persons who purchased licenses to Microsoft software through OEMs and other resellers from recovering monetary damages. Therefore, even if I give final approval to the end-user settlement, plaintiff's counsel will remain in a conflicted position.